William L. Underwood, Jr., J.
This is a special proceeding commenced by the Board of Education of Half Hollow Hills Central School District of Huntington and Babylon (“ Board ”) to vacate the arbitrator’s “ interim ” award, pursuant to CPLR 7511 (subd. [b]) upon the specific ground that the arbitrator exceeded his power in making the award (CPLR 7511, subd. [b], par. 1, cl. [iii]). The respondent Half Hollow Hill Teachers *225 Association, Inc. (“Association”) in addition to opposing the application, has interposed a cross motion to dismiss the petition. The Association urges dismissal upon the grounds that (a) the proceeding was instituted by order to show cause and affidavit instead of by a notice of petition and petition, (b) the order to show cause and affidavit were not served as directed in the order to show cause, (c) the award is not final and definite and (d) finally, that the arbitrator did not exceed his powers.
The court shall first deal with the jurisdictional objections raised by the Association.
As to the form of process utilized by the Board, it is unquestioned that a special proceeding may be commenced either by service of a notice of petition or by an order to show cause. (CPLR 304; Matter of Klahs, 55 Misc 2d 462). With respect to the ‘ ‘ affirmation ’ ’ annexed to the order to show cause, it contains all of the ingredients essential to a petition. (See 4 Carmody-Wait 2d New York Practice, § 28:1, p. 168.)
It is fundamental that the court, in determining the nature of an instrument looks to its substance, rather than to its label. To the extent that the “ affirmation ” does not bear the title of “petition”, it does not violate any substantial right of the Association, and the defect may be disregarded by the court as a mere irregularity. (CPLR 2001.)
The order to show cause required service ‘ ‘ by personal service or by mailing the same by certified mail ’ ’. The petitioner served the order to show cause upon the attorney for the Association, in person.
1 ‘ A special proceeding is commenced and jurisdiction acquired by service of a notice of petition or order to show cause ” (CPLR 304). “ A notice of petition shall be served in the same manner as a summons in an action ” (CPLR 403, subd. [c]). Since the Association is a corporation, “personal service” of the order to show cause as prescribed in the order to show cause, necessitated compliance with CPLR 311 (subd. 1) which provides for personal service upon a corporation by serving “ an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service ’ \
In State of New York v. Cortelle Corp. (73 Misc 2d 352) service was made upon the attorney for the defendant corporation. There, the Supreme Court, Nassau County, made the following findings (p. 354): “ Before considering the various motions, the court notes that although defendants Cortelle Corp., Ditmere Corp. and Tenbar Corp. do not appear to oppose the *226 plaintiff’s motion, neither does it appear that the court has jurisdiction in this action over these corporations. Service of the summons arid complaint and order to show cause was purported to have been effected by •serving Joseph D. Stim, described as attorney for said defendants. Such service is not effective to confer jurisdiction upon those corporate defendants. (CPLR 311.) ” [Emphasis added.]
The Board does not refute the Association’s allegation that the only service made was upon Donald J. Werner as attorney for the Association. However, the Board relies upon rule 36 of the Voluntary Labor Arbitration Rules /of the American Arbitration Association which reads as follows: “ 36. Serving of Notices * * * Each party to a Submission or other agreement which provides for arbitration under these Rules shall be deemed to have consented and shall consent that any papers, notices or process necessary or proper for the initiation or continuation of an arbitration under these Rules and for any court action in connection therewith or the entry of judgment on an award made.thereunder, may be served upon such party (a) by mail addressed ,to such party or his attorney at his last known address, or ¡(b) by personal service, within or without the state wherein the arbitration is to be held. ’ ’
As already teeen, CPLR 311 (subd. 1) in addition to the persons enumerated therein, also permits service upon “ any other agent authorized by appointment or by law to receive service. ’ ’
CPLR 318 and section 305 of the Business Corporation Law make provisions for appointment or designation by a corporation of a natural person as an agent to receive process on behalf of the corporation. However, the CPLR provision requires that the agent must be designated in a writing filed in the office of the clerk of the county in which the principal to be served resides or has its principal office, and the Business 'Corporation Law provision speaks in terms of a “ registered agent. ’ ’ It would appear that neither of these sections contemplates the appointment of an [attorney to receive process under rule 36 of the Voluntary Labor Arbitration Rules of the American Arbitration . Association.
As to section 5-1502H of the General Obligations Law, it pro- • vides that in a “ statutory short form power of attorney, the language conferring general authority with respect to ‘ claims and litigation,’ must be construed to mean that the principal authorizes the agent: * * * 6. To wave the issuance and service of a summons, citation or other process upon the principal, to accept service of process ’ ’,
*227 The rule relied upon by the Board as its authority for service upon the attorney, obviously does not come within the purview of the foregoing statute.
There has been however, an expanding concept permitting parties to agree to service upon a third person (who is neither the Secretary of State, nor an agent authorized pursuant to CPLR 318 or section 305 of the Business Corporation Law to accept service on behalf |of a contracting party, with respect to any litigation arising from the contract. Under such circumstances, the requirements of due process are deemed met when the “agent” promptly accepts the summons or process, and promptly transmits it or notice thereof to the principal. (See National Rental v. Szukhent, 375 U. S. 311.)
There is no contention made by the Association here that when jts attorney was .served pursuant to rule 36 of the American Arbitration Association, that it did not receive prompt notice of the proceedings herein. Nor is there any assertion by the Association that it is not bound by rule 36 in submitting its grievances for arbitration. On the contrary, the Association appears to ’concede prompt notice of service of the order to show cause, and that rule 36 is binding upon it. The court, based upon these concessions, does not deem it necessary to conduct 'a hearing on the question of prompt notice to the Association. The Association has. impliedly consented to rule 36 of the Rules of the American Arbitration Association.
Joseph M. McLaughlih, in his Practice Commentaries to CPLR 311 (McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 311) criticizing the holding of the court in Isaf v. Pennsylvania R. R. Co. (32 A D 2d 578) said: “ Surely, service upon the clerk in Isaf — even if he was but a ‘ clerk, bookkeeper and timekeeper ’-r-coud* be sustained upon the theory that his duties had acquainted him .with what he .should do if served with a summons. It is difficult to understand why, if the freight agent was accepted to be a managing agent, his subordinate should not be similarly regarded when he was left in charge of the office. To hold the service void, despite the fact that the summons went straight away to the general counsel, seems unduly harsh ” [emphasis added].
This court holds that service upon the Association’s attorney under rule 36 of the American Arbitration Association conferred jurisdiction up'on the court, and complied with the notice provisions of the order to show cause to the extent that it mandated “ personal service ”, and that such service also satisfied the requirements of due process.
*228 The Association has also argued that the petition must he dismissed upon the ground that the award of the arbitrator is not final.
The primary and threshold dispute submitted to the arbitrator, and upon which the ‘ ‘ remedy sought ’ ’ clearly depends, whs whether the Board had violated article 26 of the parties’ collective agreement by the elimination of three positions of music chairman: one for ‘ ‘ strings a second for ‘ ‘ instrumental”; and a third for “vocal”. The “remedy sought” was restoration of these positions with retroactive payment of salary.
The arbitrator, although withholding determination of the “ remedy sought ”, has reached the following conclusion, which clearly determines the rights of the parties with respect to the primary dispute submitted to the arbitrator for determination:
“ The Board of Education acted in violation of the Agreement effective July 1, 1973 to June 30, 1975 between the above-named parties when it eliminated the positions of Department Chairmen, Music (strings), Music (vocal) and assigned duties of these positions to newl (newly) .established position of' Director of Music.
“ The Association’s request for remedy is deferred, pending further proceedings.”
The court is of the opinion that the arbitrator’s award is sufficiently final and definite at this juncture, to allow an adjudication of the Board’s petition upon its merits,.
As can be determined from the language of the arbitrator’s award upon its face, the Board saw fit to eliminate the positions occupied by three chairmen in three divided branches of music, and in lieu thereof, established a single position of “ Director of Music.” It is conceded by the Association that the three chairmen were untenured; however, it contends that under article 26 of the agreement between the parties, the Board was required to maintain the positions of three music chairmen.
To the extent here applicable, article 26 of the agreement reads as follows:
“ A. The following salary differential positions shall be established or maintained and reimbursed as follows, based on Step 1A of the Indexed Salary Schedule:
Department Chairman
Elementary — at the rate of .15
Music .(strings)
Music (instrumental)
Music (vocal).”
*229 Whether it was the intent of the parties that the foregoing provision was designed exclusively to provide salary differentials for the positions which then existed, or whether its essencwas to mandate a retention of those positions at the salary dP - ferentials .set forth .in the agreement, represents a question of fact already determined by the arbitrator in arriving at his conclusion, and is not reviewable by this court.
Court review of an arbitrator’s award is generally a most limited one, and is not reviewable on questions of fact. (Matter of Colony Liq. Distrs. v. Local 669, Int. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Amer., 34 A D 2d 1060, affd. 28 N Y 2d 596; Matter of Colletti v. Mesh, 23 A D 2d 245, 248, affd. 17 N Y 2d 460.)
It is the position of the Board, however, that even if its contract with the Association specifically required the Board to establish and maintain the three music chairmanships, that such agreement is violative of the provisions of section 3012 (subd. 1, par. [b]) and subdivision 16 of section 1709 of the Education Law.
Thus, this court is being called upon to decide the legality of the contract provisions giving rise to the controversy which has been submitted for arbitration.
This issue of illegality is a threshold question to be decided by a court rather than a matter to be decided by an arbitrator.
As the court stated in Hurst v. Abrash (22 A D 2d 39, 41, affd. 17 N Y 2d 445): “ an agreement to arbitrate subject to a claim of infirmity for illegality in the principal agreement involves a preliminary question to be determined by the court and not by the arbitrators.”
Section 3012 of the Education Law is entitled ‘ ‘ Tenure: certain union free school districts.” Paragraph (a) of subdivision 1 deals primarily with the appointment of teachers, subject to a probationary period of five years.
Paragraph (b) of subdivision 1 of that section, which is heavily relied upon by the Board in support of its contentions of illegality, reads in full, as follows: “ (b) Principals, supervisors and all other members of the supervising staff shall be appointed by the board of education of a union free school district having a population of more than forty-five hundred inhabitants and employing a superintendent of schools, upon a recommendation of such superintendent of schools. The service of a person appointed to any of such positions may be discontinued at any time on the recommendation of the superintendent of schools, by a majority vote of the board of education, except *230 that the board of education- may, in its discretion, enter into cm employment contract with any principal, supervisor, or member of the supervisory staff for a period of from one to five years. Such contracts may include duties, compensation, and other terms and conditions of employment and may specify the grounds on which such contract may be terminated and the procedure to be followed in the event of termination prior, to its expiration dafe” [emphasis added].
It is conceded by the Board that the position of chairman falls within ithe category of “ supervisor ” referred to in the foregoing statute.
Subdivision 16 of section 1709 of the Education Law, also relied upon by the Board, provides: “ The said board of education of every union free' school district shall have power, and it shall be its duty * * * 16. To contract with and employ such persons as by the provisions of this chapter are qualified teachers, to determine the number of teachers to be employed in the several departments of instruction in said school, and at the time of such employment, to make and deliver to each teacher a written contract as required by section three thousand eleven of this chapter, except as otherwise provided by sections three thousand twelve and three thousand thirteen; and employ such persons ¡as may be necessary to supervise, organize, conduct and maintain athletic, playground and social center activities, or for any one or more of such purposes; and to adopt rules and regulations governing the excusing of absences of all teachers and other employees and for the granting of leaves of absence to such employees either with or without pay. The regular teachers of the school may be employed at an increased compensation or otherwise, and by separate agreement, written or oral, for one or more of such purposes.”
In Board of Educ. Union Free School Fist. No. 3 v. Associated Teachers of Huntington (30 N Y 2d 122) the Court of Appeals held that the Board’s premise in that case that it possessed only those powers granted to it under section 1709 of the Education Law was falacious. The court pointed out that under the Taylor Law;(p. 129), “ the obligation to bargain as to all terms and conditions of employment is a broad and unqualified one, and there is no reason why the mandatory provision. of that act should be limited, in any way, except in cases where some other applicable statutory provision explicitly and definitively prohibits the public employer from making an agreement as to a particular term or condition of employment.” The court went on to state (p. 130): “ Public employers must, therefore, be *231 presumed to possess the broad powers needed to negotiate with employees as to all terms and conditions of employment. The presumption may, of course, be rebutted by showing statutory provisions which expressly prohibit collective bargaining as to a particular term or condition. ’ ’
Nothing contained in the statutory provisions relied upon by the petitioner here, can be deemed as an express legislative restriction of the Board’s authority to establish and maintain supervisory and untenured positions for a stated period of time. On the contrary, section 3012 (subd. 1, par. [b]) of the Education Law expressly provides, in effect, that the Board may enter into employment contracts with untenured supervisors or members of the supervising staff for a period of from one to five years. j
If it was more economical for the Board to retain one director of music instead of the three chairmen, the Board ¡should not have agreed to the provisions of article 26. The Board should not be permitted, at this stage, to breach its contract with the Association, merely because, in retrospect, it might have bargained more advantageously. Nor will the court rewrite the contract under the guise of an illegality which the Board has failed to establish within the guidelines of Board of Educ. Union Free School Dist. No. 3 v. Associated Teachers of Huntington (supra).
The petition to vacate the arbitrator’s award is denied.