In the Matter of the Arbitration between BOARD OF EDUCATION OF THE WESTMORELAND CENTRAL SCHOOL DISTRICT, Appellant, and WESTMORELAND TEACHERS ASSOCIATION, INC., Respondent.

In the Matter of BOARD OF EDUCATION OF THE WESTMORELAND CENTRAL SCHOOL DISTRICT, Appellant, v WESTMORELAND TEACHERS ASSOCIATION, INC., Respondent.

Fourth Department, July 12, 1977

*Michael P. De Santis* for appellant.

*Bernard F. Ashe (Ivor R. Moskowitz* of counsel), for respondent.

DILLON, J. Petitioner makes application under CPLR 7511 (subd [b], par 1, cl [iii]) to vacate an arbitration award upon the ground that the arbitrator exceeded his power in fashioning an award outside the scope of the dispute submitted to him and beyond the authority conferred upon him under the

collective bargaining agreement. Petitioner also brings a special proceeding pursuant to CPLR 7503 (subd [b]) seeking a stay of arbitration upon the ground that the arbitrator exceeded his power in retaining jurisdiction to award remedies for the school year next succeeding that in which the grievances were filed.

The relevant facts are essentially undisputed. Respondent is the collective bargaining agent for the teachers in the Westmoreland Central School District. The parties executed a collective bargaining agreement for the period of July 1, 1974 to June 30, 1977. The grievance procedure contained therein culminates in the submission of all unresolved grievances to final and binding arbitration. Article 4 of the agreement is entitled "Class Size and Teaching Load" and establishes intended maximum enrollment limits in particular classes and the intended maximum number of teaching assignments for secondary teachers.

Approximately three months after the start of the 1975-1976 school year, the respondent filed three grievances alleging violations of article 4 of the agreement and the matter thereafter proceeded to arbitration upon the following substantive issues:

1. Did the district violate the contract by maintaining enrollments in the elementary grades since December 15, 1975 in excess of the prescribed maximums set forth in article 4? If so, what shall the remedy be?

2. Did the district violate the contract by maintaining enrollments in secondary classes since December 10, 1975 in excess of the prescribed maximums set forth in article 4? If so, what shall the remedy be?

3. Did the district violate the contract by assigning two math teachers six classes and one math teacher three classes? If so, what shall the remedy be?

While the arbitrator found that petitioner had not violated the contract regarding enrollments in the elementary grades, he found violations with respect to secondary class enrollments during the 1975-1976 school year and with respect to the assignment of math teachers to an excessive number of classes. Since the arbitration hearing was not concluded until the expiration of the 1975-1976 school year, respondent urged that petitioner be mandated to adhere to class size restrictions for the ensuing 1976-1977 school year, a period covered by the collective bargaining agreement. Noting that "we are not yet

privy to the facts and circumstances that may affect the District's determination of class sizes and workloads in the ensuing school year", the arbitrator declined to direct such an award but granted the following remedy:

"The proper representatives of the District and Association shall meet and confer within 5 days of the receipt of this Award in an effort to agree upon the class size and workload schedule of the 1976-1977 school year. If no agreement can be achieved thereon, either side, on due and proper notice to the other, may petition the undersigned for a hearing and determination on class sizes and workloads in the District for the year, 1976-1977, in accordance with the intent and purpose of the collective agreement, and to award remedies in connection therewith.

"No monetary damages are awarded."

Upon the failure of the parties to reach an agreement as to class size and teacher workload schedules for the year 1976-1977, the respondent petitioned the arbitrator on September 16, 1976 for a further hearing pursuant to the award. It is that action which petitioner seeks to stay in the proceeding brought pursuant to CPLR 7503. We hold that in the circumstances here, the proceeding for a stay of arbitration is unnecessary because, for all practical purposes, the same relief is available in petitioner's proceeding under CPLR 7511 to vacate the award. Conversely, if the award is sustained, the petitioner would not qualify to apply for a stay since it had participated in the arbitration (CPLR 7503, subd [b]; see, also, *Matter of National Cash Register Co. [Wilson]*, 8 NY2d 377, 383).

Thus the sole issue presented is whether petitioner's rights were prejudiced by the arbitrator making an award which "exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made" (CPLR 7511, subd [b], par 1, cl [iii]). Petitioner urges that in fashioning such a remedy, the arbitrator assumed jurisdiction over disputes which had not yet materialized and effectively circumvented the grievance procedure of the contract. It is argued that the award ignores and violates express contractual preconditions to arbitration and thus makes a new contract for the parties. We find no merit in petitioner's argument.

The public policy of this State is to encourage voluntary resolution of labor disputes involving public employees (Civil

Service Law, § 200). It is equally true that public policy "frowns upon judicial attempts to resolve such disputes" *(Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167, 171). Arbitration is analogous to a proceeding in equity and the arbitrator's duty is to reach a just result regardless of the technicalities *(Board of Educ. v Bellmore-Merrick United Secondary Teachers, supra,* p 172; *Matter of Associated Teachers of Huntington v Board of Educ.,* 33 NY2d 229, 235; *Matter of Raisler Corp. [N.Y. City Housing Auth.],* 32 NY2d 274, 285).

As was stated by Justice GOLDMAN in *Matter of Fayetteville-Manlius Cent. School Dist. (Fayetteville-Manlius Teachers Assn.)* (51 AD2d 91, 96 [dissenting opn], revd for reasons stated in dissenting opn 41 NY2d 818, decided February 8, 1977), the parameters of a remedy awarded by an arbitrator for a violation of a collective bargaining agreement are indeed very broad and unless limited by the plain terms of the submission, the arbitrator is free to grant any relief reasonably fitting and necessary to the final determination of the matter submitted to him (see *Matter of British Overseas Airways Corp. v International Assn. of Machinists & Aerospace Workers, AFL-CIO,* 39 AD2d, 900, 901 [dissenting opn], revd on dissenting opn 32 NY2d 823). In formulating remedies, it is essential that an arbitrator have broad flexibility in order to meet a "wide variety of situations" *(Steelworkers v Enterprise Corp.,* 363 US 593, 597). It may be said that the arbitrator exceeded his power "only if [he] gave a completely irrational construction to the provisions in dispute and, in effect, made a new contract for the parties" *(Matter of National Cash Register Co. [Wilson],* 8 NY2d 377, 383, *supra).*

Here the arbitrator's decision notes "that in the 1974-1975 school year (and probably in earlier situations) class sizes were exceeded in the District without grievances by either the Association or the affected teachers." Additionally, he found that petitioner had violated the intent of article 4 of the agreement in maintaining class enrollments and teacher workloads in excess of contractual maximum limits for the 1975-1976 school year. When that determination was reached, it was too late to devise a meaningful corrective remedy for the 1975-1976 contractual violations. The arbitrator determined, however, that respondent was entitled to equitable relief in accordance with the "flexible and conditional language of the contract".

It is the arbitrator's construction of the contract which was bargained for by the parties. It is well settled that interpretation of the contract is reserved to the arbitrator and "the courts have no business overruling him because their interpretation of the contract is different from his" *(Steelworkers v Enterprise Corp., supra,* p 599; *Steelworkers v American Mfg. Co.,* 363 US 564).

The petitioner has failed in its burden to establish that the award was in contravention of the express terms of the collective bargaining agreement or beyond the scope of the submission of the dispute by the parties. Moreover, on this record it cannot be said that "the award is 'completely irrational' and, in effect, makes a new agreement for the parties" *(Matter of Fayetteville-Manlius Cent. School Dist. [Fayetteville-Manlius Teachers Assn.],* 51 AD2d 91, 95, *supra).* In maintaining continuing jurisdiction over class sizes and teacher workload schedules for the ensuing contractual school year, the arbitrator gave weight and meaning to the intent of the parties as expressed in article 4.

This is not to say, of course, that the arbitrator's powers are unlimited. The award must not be read as conferring upon the arbitrator continuing supervisory powers in purely administrative matters. His authority is limited to adjustments of class size and teacher workload schedules for the ensuing year only and any action taken by him in this regard must be consistent with the terms of the bargaining agreement.

Here the grievances were filed in December, 1975 and not resolved by arbitration until August 30, 1976. In the event of similar violations of the agreement in the 1976-1977 school year, the time required for the grievance and arbitration procedure would so extend the dispute into that school year that the petitioner would not have a feasible opportunity, as the arbitrator noted in another context, "to correct its excesses, without visiting hardships on all concerned personnel and frustrating the legitimate objective of the school system." Had the arbitrator failed to devise the kind of award we see here, the intent of the parties as expressed in article 4 to maintain class sizes "commensurate with good educational practice" and normally to maintain a maximum complement of five teaching assignments for secondary teachers could be frustrated for the entire life of the collective bargaining agreement.

The award clearly resolves the issues presented in the

submission and defines the future roles of the parties. Thus viewed, it is "final and definite" (CPLR 7511, subd [b], par 1, cl [iii]; see *Matter of Board of Educ. [Half Hollow Hills Teachers Assn.]*, 79 Misc 2d 223). True, it allows for the elimination of the first three steps of the grievance procedure should the parties be unable to agree upon class sizes and teacher schedules for the 1976-1977 school year. In view of the past practices of the parties with respect to this dispute, however, such a result is not unreasonable and is consistent with the general intent of the contract. Where, as here, the grievance procedure has once been exhausted, the specific provisions of the contract may not be relied upon to defeat or frustrate the overriding purpose of the parties.

The award constitutes a reasonable exercise of the power and authority conferred upon the arbitrator in both the agreement and the submission, and it should be confirmed in all respects.

The order of Special Term should be affirmed.

MARSH, P. J., MOULE, SIMONS and WITMER, JJ., concur.

Orders unanimously affirmed without costs.