*380
 
 Fuld, J.
 

 In 1952, petitioner National Cash Register Company and the Union, which represented the Company’s production and maintenance employees, entered into a five-year collective bargaining agreement, providing, among other things, for seniority rights of the employees. In the Autumn of 1956, the Union called an economic strike, concededly lawful, which was terminated on December 26, shortly after two strike settlement supplemental agreements — one dated December 20, the other December 24—were executed.
 

 The Memorandum of Agreement of December 20 extended the original 1952 collective bargaining agreement for one year, reciting that it was to be extended and remain in effect until May 8, 1958 ”. In addition, this Agreement provided that, except for a 10-day period immediately following the strike settlement, the recall of employees was to be in the order of their seniority. Thus, section 6 of the Agreement read in this way: ‘ The seniority provisions of the Collective Bargaining Agreement are hereby waived for a period of ten (10) working days, following the signing of a strike settlement agreement with respect to recall of the employees, and thereafter such recall shall be in accordance with the seniority provisions of the existing collective bargaining agreement.” And the later Strike Settlement Agreement of December 24 recited that ‘‘ All recalls under Section 6 of the memorandum agreement will be made on a fair and equitable basis.” According to officials of the Union, these provisions reflected an understanding that ‘ ‘ no preference be given either to strikers or non-strikers, and that at the end of 10-days contract seniority should prevail ”; it was the Union’s position, in other words, that, when recalled after the 10-day period, strikers, if possessed of greater seniority, would replace nonstrikers within their respective classification.
 

 The December agreements terminated the strike and the return to work began on December 26. The Union claims that the Company violated its undertaking to recall employees in accordance with the seniority provisions of the collective bargaining agreement, that, during the 10-day waiver of seniority period, it proceeded to retain all of the nonstriking employees without regard to their skills or the needs of production. And, after the lapse of the 10-day period, the Company, in recalling employees to work, applied seniority rights not among
 
 all
 
 the
 
 *381
 
 employees — those who did not strike at all and those who had been recalled during the 10-day period—but only among those who were still out because of the strike. The Union filed á grievance and demanded arbitration, urging, in effect, that the Company, by retaining the nonstrikers irrespective of their seniority, placed them in a position of superseniority over their striking brethren.
 

 The Company notified the Union that it deemed the dispute not arbitrable. But, although it registered its objection to arbitration during the proceedings, it did not make a motion for a stay of arbitration. Instead, it agreed to submit the question of arbitrability to the three-man board of arbitrators and participated fully in the proceedings, selecting one of the arbitrators, presenting detailed evidence and submitting briefs. It is, nevertheless, the Company’s contention that the dispute was not subject to arbitration because the December strike settlement supplements contained neither an express agreement to arbitrate nor any clause which would have made them a part of the principal collective bargaining agreement which itself provided for arbitration only of disputes arising under its own terms. On the merits, jurisdiction aside, the Company argues that it did not violate the December 20th agreement, that its procedure for recalling employees
 
 ‘ ‘
 
 followed the language of Section 6 explicitly ”. More specifically, the Company maintains that it was not obliged to recall strikers to replace nonstriking employees within the same classification even if the strikers had greater seniority; that only if a nonstriker had been transferred to a striking employee’s job, would that striker be entitled to replace the nonstriker.
 

 Two of the three arbitrators decided, with some reservations, in favor of the Union’s position and ruled that the specification in the Settlement Agreement of December 24 that all recalls were to be made on a “ fair and equitable basis ’ ’ required the Company ‘ ‘ to reinstate, starting with the 11th day after the end of the strike, the ‘ status quo ante ’ which prevailed immediately prior to the start of the strike. ’ ’ They also decided that employees were entitled to reimbursement for any loss of earnings' incurred as a result of the Company’s departure from such method of recall. The consequent award is the subject of the present proceeding to vacate.
 

 
 *382
 
 The Court at Special Term vacated the award on the ground that' the December strike settlement agreements contained no provision for arbitration and that the arbitration clause of the original collective bargaining agreement provided for arbitration only of “ ‘ disputes arising under this agreement ’ ”. The Appellate Division took a different view. It reversed Special Term’s order and confirmed the award, declaring that the December agreements
 
 ‘
 
 were merely supplements to the original agreement ” and that “the arbitration clause contained in the original * * * applied to the entire agreement between the parties as amended and supplemented ”. With this, as well as with its other grounds for decision, we are in full accord.
 

 The arbitration clause (§ 7) of the main collective bargaining agreement, after providing for arbitration of any disagreement “respecting the provisions of this agreement,” defines the ‘
 
 ‘
 
 Scope of Arbitration ” in “ F ” in this way:
 
 ‘ ‘
 
 The Arbitration Board shall have the authority only to settle disputes arising under this agreement and may only interpret and apply this agreement to the facts of the particular grievance involved. It shall have no power to add to, subtract from or modify
 
 this agreement or any supplement to it.”
 
 (Emphasis supplied.) By including in section 7F of the main agreement the words, “ or any supplement to it [i.e., the agreement] ”, the Arbitration Board was given authority to pass on any dispute arising not only from the main agreement, but also from ‘ ‘ any supplement to it ”. And, since there can be no donbt that the two strike settlement agreements of December, 1956 were “ supplements ’ ’ to the collective bargaining agreement, it necessarily follows that the three formed a single union-management contract.
 

 In any event, though, even if it could be argued that there was no right to arbitrate" the controversy here at issue, the Company, by proceeding to arbitration without moving for a stay, must be deemed to have waived its contention that the agreement did not provide for arbitration.
 

 The circumstances under which a party may move to vacate an arbitration award are strictly limited by the provisions of the Civil Practice Act dealing with arbitration (§§ 1458, 1462). If a party against whom arbitration is sought has
 
 not
 
 partici
 
 *383
 
 pated in the selection of arbitrators or in the proceedings before them, he is free to put in issue the question of nonarbitrability, that is, that “ there was no valid submission or contract” to arbitrate, either by a motion for a stay of the arbitration in advance of arbitration or by a motion to vacate the award following the arbitration (§ 1458, subd. 2; § 1462, subd. 5). But if he elects to participate in the selection of the arbitrators or to go forward with the proceedings, he may not thereafter move to vacate on the ground that there was no contract to arbitrate. Having taken part in the arbitration, he may
 
 “
 
 object to the confirmation of the award,” subdivision 1 of section 1458 recites,
 
 “
 
 only on one or more of the grounds specified ” in subdivisions 1 through 4 of section 1462: (1) corruption, fraud or other undue means in procuring award; (2) partiality or corruption of arbitrators ; (3) misconduct of arbitrators in refusing to postpone hearing or to hear material evidence; and (4) act of arbitrators in exceeding their powers or imperfectly executing them. Since, therefore, the Company in this case selected an arbitrator and participated in the arbitration proceedings, it may not, following an adverse decision before the arbitration tribunal, be heard to question either the existence of a contract to arbitrate or the arbitrators’ jurisdiction over the subject matter.
 

 As to the Company’s contention that the arbitrators “ exceeded their powers ” within the meaning of section 1462, it is enough to point out that (in the context of the case before us) arbitrators may be said to have done so only if they gave a completely irrational construction to the provisions in dispute and, in effect, made a new contract for the parties. (See, e.g.,
 
 Matter of S & W Fine Foods [Office Employees Int. Union, Local 153, AFL-CIO],
 
 7 N Y 2d 1018;
 
 Matter of Wilkins,
 
 169 N. Y. 494, 496-497;
 
 Steelworkers
 
 v.
 
 Enterprise Corp.,
 
 363 U. S. 593, 597.) The mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not mean that the arbitrators so misread those provisions as to empower a court to set aside the award. It appears clear to us that the agreement between the Company and the Union is reasonably susceptible of the construction given it by the arbitrators. Accordingly, since they acted within their powers and are not chargeable with such misconduct as is specified in section 1462 of the Civil Practice
 
 *384
 
 Act, the award is unassailable and, disappointing though it may be to one of the parties, must be obeyed.
 

 The judgment of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Desmond and Judges Dye, Froessel, Van Voorhis and Burke concur; Judge Foster taking no part.
 

 Judgment affirmed.