In the Matter of the Arbitration between WHITNEY POINT CENTRAL SCHOOL, Appellant, and WHITNEY POINT TEACHERS ASSOCIATION, Respondent.

Third Department, January 27, 1977

*Pearis, Resseguie, Hogan & Kline (John B. Hogan* of counsel), for appellant.

*Bernard F. Ashe (Ira Paul Rubtchinsky* of counsel), for respondent.

KOREMAN, P.J. On September 3, 1974, the Whitney Point Central School District and the Whitney Point Central School Teachers Association entered into a collective bargaining agreement. Article 16 entitled, "Conditions of Employment", states in part: "All conditions of employment shall be maintained at not less than the highest minimum standards in effect in the District at the time this Agreement is signed provided that such conditions shall contribute to the improvement of the general educational program." The agreement provided for grievance procedures culminating in binding arbitration. A grievance was "limited to a complaint or request of an employee which involves the interpretation or application of, or compliance with, the provisions of [the] Agreement".

The district had three teachers including respondents Paulsen and Shank in the language department. Due to declining enrollment in the language department coupled with economic problems confronting the district, the language department was reorganized by the district for the school year 1975-

1976. Language offerings were modified and the effect thereof was to change the three full-time language teachers to part-time. The junior teachers, Paulsen and Shank, would go from full-time to half-time with a corresponding decrease in salary. There are no other course offerings which these teachers can teach, and petitioner maintains that there is only need for Paulsen and Shank on a half-time basis.

The teachers association filed grievances on behalf of Paulsen and Shank alleging violations of the collective bargaining agreement, specifically violations of article 16 in that the hours of Paulsen and Shank were reduced from full-time to part-time. The grievances proceeded to arbitration.

The issue confronting the arbitrator was "whether or not the District violated Article 16 (Conditions of Employment) of the collective bargaining agreement." While recognizing that the district is vested with the right and obligation to design and implement the educational program for Whitney Point and that course content is not a condition of employment controlled by the collective bargaining agreement, the arbitrator determined that the district "must demonstrate that the change it plans will have a positive effect on the quality of the total program [and] not just be more economical to operate." The arbitrator determined that the district failed to meet its burden of proof: "The district did not attempt to prove that the existing program was poor in quality and that its proposed change would improve it. At best, it attempted to prove that its proposed change would not detract from the present quality of the program." Consequently, the arbitrator upheld the grievance and ordered the district to retain Paulsen and Shank on a full-time basis with full salary. In the opinion of the arbitrator, article 16 of the collective bargaining agreement has no practical meaning if it does not protect the hours worked and pay received by a teacher, which may not be altered purely for economic reasons. Special Term concluded that since the arbitrator's award was not contrary to statute or public policy, judicial intervention was not warranted.

Judicial review of an arbitrator's award is, of course, severely restricted (CPLR 7501, 7511, subd [b], par 1), and, absent provision to the contrary in the arbitration agreement, an arbitration award is not reviewable by a court for errors of law or fact (*Matter of Associated Teachers of Huntington v Board of Educ., Union Free School Dist. No. 3,* 33 NY2d 229, 235). As to the petitioner's contention that the arbitrator

exceeded his powers, in the context of the case before us, he may be said to have done so only if he gave a completely irrational construction to the provisions of article 16 in dispute, and, in effect, made a new contract for the parties *(Lentine v Fundaro,* 29 NY2d 382; *Matter of National Cash Register Co. [Wilson],* 8 NY2d 377, 383). It is clear that the arbitrator merely interpreted article 16 in a manner adverse to the interests of the school board, and that under the broad arbitration clause, article 16 is reasonably susceptible of the construction given it by the arbitrator. The fact that the article in question may have been subject to a different interpretation does not provide a basis for judicial intervention *(Matter of National Cash Register [Wilson], supra).* "Save for 'complete irrationality', arbitrators are free to fashion the applicable rules and determine the facts of a dispute before them without their award being subject to judicial revision" *(Lentine v Fundaro, supra,* p 383). In our opinion, Special Term properly concluded that there is no warrant for judicial intervention with the arbitrator's award.

The factual situation herein brings into focus the problem which is confronting school districts harassed by financial problems. It would appear that the only present answer to the problem is that school boards must realize what the effect of clauses in contracts entails as applicable to possible future conditions.

The order and judgment should be affirmed, without costs.

LARKIN, J. (dissenting). I dissent. In my view the arbitrator exceeded his authority in construing article 16 of the subject contract as a job security clause (CPLR 7511, subd [b], par 1, cl [iii]). The Court of Appeals has recently reviewed, in different procedural contexts, three alleged job security clauses *(Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Federation of Teachers,* 40 NY2d 268; *Matter of Burke v Bowen,* 40 NY2d 264; *Yonkers School Crossing Guard Union of Westchester Ch. CSEA v City of Yonkers,* 39 NY2d 964).

In *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Federation of Teachers (supra,* p 272), the contractual provision in question provided that: "During the life of this contract no person in this bargaining unit shall be terminated due to budgetary reasons or abolition of programs but only for unsatisfactory job performance as provided for under the Tenure Law." In reversing the order of the Appellate Division granting a stay of arbitration, declaring the clause void and

against public policy and denying a cross motion to compel arbitration, the Court of Appeals found (p 274) that "[t]here is no statute or controlling decisional law or other source of public policy prohibiting a public employer from voluntarily agreeing to submit controversies over staff size or 'job security' to arbitration". (See, also, *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.]*, 37 NY2d 614.) In so deciding, however, the court stated (p 275): "This is not to say, however, that all job security clauses are valid and enforceable or that they are valid and enforceable under all circumstances * * *. Most important, the job security clause in the instant case is explicit in its protection of the teachers from abolition of their positions due to budgetary stringencies". In *Matter of Burke v Bowen (supra,* p 267) although affirming the order of the Appellate Division dismissing the article 78 petition on the ground of lack of standing, the court stated that the job security clause in issue was valid in that it "was explicit and provided that 'in no event shall the presently agreed upon minimum [number of employees] be readjusted downward.' "

In *Yonkers School Crossing Guard Union of Westchester Ch. CSEA v City of Yonkers (supra,* p 965), in contrast, the Court of Appeals affirmed an Appellate Division order which, among other things, declared that a contractual provision providing that " '[p]resent members may be removed for cause but will not be removed as a result of Post elimination' " was not a bar to the dismissal of employees as the result of economic necessity. The court contrasted the clause under scrutiny with those in *Matter of Board of Educ. of Yonkers School Dist. v Yonkers Federation of Teachers (supra),* and *Matter of Burke v Bowen (supra),* and found (p 965) that while "[i]n those cases, the job security clauses were explicit, unambiguous and comprehensive. In contrast, the instant clause is ambiguous". Article 16 of the collective bargaining agreement between the parties hereto is neither "explicit" nor "unambiguous" as to the question of job security, as were the said clauses which the Court of Appeals has recently upheld and, in my opinion, is even less explicit in prohibiting job elimination than the clause found not to prevent employee dismissals in *Yonkers School Crossing Guard Union of Westchester Ch. CSEA v City of Yonkers (supra).*

Applying the standard of interpretation of clauses in collective bargaining agreements relating to job security recently

enunciated by the Court of Appeals to article 16 herein, I conclude that the arbitrator made a "completely irrational construction * * * and, in effect made a new contract for the parties" *(Matter of National Cash Register Co. [Wilson],* 8 NY2d 377, 383. See, also, *Lentine v Fundaro,* 29 NY2d 382). As such, he exceeded his powers. In addition, I note that in the opinion of the arbitrator, article 16 of the collective bargaining agreement limited the right of the district to alter conditions of employment purely for economic purposes. But purely economic reasons were not the sole cause of the reduction in the teaching force, for the record indicates, and this court agrees, that it was declining enrollment in the language department, plus economic reasons confronting the district, that prompted the board's decision. The order denying the petitioner's motion to vacate the award should be reversed.

SWEENEY, MAIN and HERLIHY, JJ., concur with KOREMAN, P. J.; LARKIN, J., dissents and votes to reverse in a separate opinion.

Order and judgment affirmed, without costs.