In the Matter of MARGO J. SIMPSON et al., Respondents, v NORTH COLLINS CENTRAL SCHOOL DISTRICT, Appellant.

Fourth Department, February 18, 1977

*Hodgson, Russ, Andrews, Woods & Goodyear (Robert B. Conklin* and *Karl W. Kristott* of counsel), for appellant.

*Bernard F. Ashe* (*Richard E. Casagrande* and *Rocco A. Solimando* of counsel), for respondents.

GOLDMAN, J. Petitioner, the North Collins Central School District, appeals from a judgment which denied petitioner's application to vacate or modify an arbitration award and instead confirmed the award, reduced it to judgment and ordered petitioner to comply forthwith. The award, which resulted from grievances filed by respondents Simpson and Skeels, determined that the termination of their employment as teachers in the petitioner's district was "not justified" and required their reinstatement with back pay.

Respondent Skeels was appointed by petitioner's board of education as a probationary teacher effective on September 1, 1972, and respondent Simpson was appointed, also on probationary status, effective on January 26, 1973. Both respondents continued to serve in that status through the 1974-1975 academic year. On or about March 6, 1975, both respondents were advised by letters from petitioner's district superintendent that their employment would be terminated as of the end of the 1974-1975 school year and that they would not be recommended for tenure. On March 17, 1975, pursuant to section 3031 of the Education Law and respondents' requests, the district superintendent furnished respondents with written statements of the reasons for his recommendations. The statement furnished to respondent Skeels cites, *inter alia,* failure to gear instructional activity to individual levels of ability of children in the class, failure to have children work together in small groups, failure to implement projects resulting from student suggestions, unsatisfactory oral questioning techniques, and failure to seek out supervisory advice. The statement furnished to respondent Simpson cited, *inter alia,* ineffectiveness in maintaining order in the classroom, failure to have children work in small groups, failure to provide for "the individual needs of children", failure to employ "the discovery approach", a too-rapid pace of teaching, failure to implement supervisory suggestions and seek supervisory help, and failure to display "a genuine concern to upgrade herself" in certain "critical areas". Petitioner's board of education took action to terminate each respondent's employment effective on or about June 26, 1975. The board further directed that respondents be notified that tenure would not be granted to them. Thus respondent Skeels was terminated at the end of her three-year statutory probationary period (see Education

Law, § 3013), whereas respondent Simpson was terminated during her probationary period, when some seven months remained until its expiration.

During the 1974-1975 academic year, a collective bargaining agreement was in effect between the petitioner district and respondent North Collins Teachers Association, which was the duly authorized bargaining agent for all teachers employed by the petitioner. The agreement provided for a five-step grievance procedure culminating in "binding" arbitration. Respondents Skeels and Simpson submitted grievances alleging that they had been dismissed without "just cause" in violation of section 4.9 of the collective bargaining agreement.[1] That section provides:

*"Fair Dismissal:* The direction of the employees, including the right to hire, assign, transfer, promote, discharge or discipline for just cause the right to determine the extent to which the educational facilities shall be operated, the right to change methods or procedures or to use new equipment and the right to extend, limit or curtail its operations are vested exclusively in the Board of Education within the limits of the law.

"In no case shall the exercise of the above prerogatives of administration be in derogation of the terms and conditions of this agreement.

"If any employee feels aggrieved by any action of the Board or its designated representatives, taken pursuant to this Article, he shall have recourse through the grievance procedure as set forth in this agreement."

The grievances duly proceeded to arbitration before a mutually-selected arbitrator. The submission, which was agreed upon by the parties, reads as follows: "Was the North Collins Central School Board of Education justified in terminating the employment of Margaret Ann Skeels and Margo Joan Simpson? If not, what shall the remedy be?"

After evidentiary hearings, the arbitrator made an award in the following language:

---

1. According to respondents' answer, the grievances also allege violations of section 10 of the collective bargaining agreement. Unfortunately, the grievances do not appear verbatim in the record, nor is section 10 of the agreement included, and the content of that section is not disclosed. However, it is evident from the submission and the arbitrator's opinion that he considered only section 4.9 of the agreement, and the parties on this appeal do not rely on any claimed violation of section 10.

"The termination of Margaret Ann Skeels and Margo Joan Simpson was not justified.

"The parties shall be re-instated with back pay, minus any wages which they have earned since the first day of school in September, 1975."

The arbitrator also issued a lengthy opinion, in which he decided that section 4.9 of the collective bargaining agreement governed the termination of probationary teachers. He interpreted "just cause" to mean "that the action taken against the grievant must have been for reasons that would be acceptable to an objective observer" and "must be based upon the acts of the grievant as measured against a standard which is well established, well defined, and is known or should have been known by the grievant". In the case of respondent Simpson, the arbitrator found that she was observed and evaluated by her building principal on three occasions in the 1974-1975 school year. However, he found that the principal did not do anything to overcome Simpson's "uncomfortableness" in post-observation meetings; that the evaluations were conducted on a "hurry up schedule"; that respondent was therefore given an unreasonably short time in which to make the required improvements; that she nevertheless did show some improvement in areas to which her attention was called; that she was "not given the proper guidance by the building principal"; and that some of the performance standards which she was expected to meet were not specifically brought to her attention.

The arbitrator's opinion stated that respondent Skeels also was observed for evaluation three times in the 1974-1975 school year, and that various evaluation reports were prepared. The arbitrator noted that she showed "marked improvement" between May, 1973 and February, 1974; that she was rated "satisfactory" in 14 out of 18 categories in the final evaluation report of February 27, 1975, and not rated "unsatisfactory" in any categories; that "the District appears to have moved rapidly in this case in order to meet the deadline of March 1, regarding the renewal of contracts"; and that "the record does not indicate that [Skeels] is the best teacher, but neither does it indicate that this teacher is failing in her overall performance". In the case of both Skeels and Simpson, the arbitrator found that "the Board * * * has failed to measure this grievant's performance against a standard as demonstrated through the teaching performance of other teachers in the School District".

Two weeks after the date of the award, the petitioner district, by letter, requested the arbitrator to modify the award on the ground that it was imperfect in form (see CPLR 7509, 7511, subd [c]) for failure to specify "whether, upon reinstatement, the grievants are to be on a tenured or probationary status and, if the latter, how long the probationary status shall continue". The letter went on to suggest that "the grievants can at best be reinstated to probationary status and that such status should continue until August 31, 1976". The arbitrator declined to modify the award, taking the view that it was not imperfect in form and that he "would exceed his powers if he ruled on the issue of probationary or tenured status". Petitioner then brought the instant proceeding to vacate or modify the award. When Special Term denied the petition and granted the cross motion to confirm the award, this appeal followed.

Petitioner-appellant contends that "in cases involving the discontinuance of a probationary teacher's employment at the end of the statutory probationary term because of non-recommendation for tenure by the District Superintendent * * * a 'just cause' dismissal clause in a collective negotiations agreement should not provide a vehicle for the award of a permanent teacher contract (i.e., tenure) because that substantive question is outside an arbitrator's authority by virtue of the statutes, decisions, and public policy of the State of New York". Analysis of this contention is best begun with *Matter of Cohoes City School Dist v Cohoes Teachers Assn.* (40 NY2d 774) where a collective bargaining agreement provision forbidding dismissal without "just cause" was held violative of public policy when applied by an arbitrator to reinstate a teacher who was terminated at the end of his probationary period. The court stated (p 777):

"In our view the authority and responsibility vested in a school board under the several provisions of the Education Law to make tenure decisions cannot be relinquished. While a board may legally agree to augment evaluation procedures and even to limit or to forego its right to discharge a probationary teacher during the period of probation, under the Education Law a board cannot surrender its authority to terminate the employment of a nontenured teacher at the end of the probationary period. Any provision of a collective bargaining agreement which would have that effect is accordingly unenforceable as against public policy. The [just cause]

provision * * * of the collective bargaining agreement here, to the extent that the school board thereby surrendered its authority to terminate a nontenured teacher without just cause at the end of the probationary period, transgressed this principle. * * * We hold * * * that to the extent that [the 'just cause' provision] purported to prohibit termination without just cause at the end of the probationary period it is unenforceable". The court nevertheless upheld the award, as modified by the Third Department, on grounds that the teacher had not been evaluated in accordance with procedures specified in the collective bargaining agreement.

Respondents seek to distinguish *Cohoes* on the ground that the parties there agreed, in the words of the Court of Appeals, "that under general principles employment of [the teacher] beyond the probationary period would automatically ripen into tenure" *(id., p 776).*[2] Thus, conclude respondents, a "just cause" termination provision offends public policy only "to the extent it permanitizes the grievant's employment relationship with the Board of Education", whereas here the award did not result in tenure. We do not believe that *Cohoes* can be distinguished on that ground.

The question before us is whether the arbitrator exceeded his powers by interpreting the "just cause" provision so as to authorize him to fashion *ad hoc* procedural standards for evaluation of probationary teachers. An award may be vacated under CPLR 7511 (subd [b], par 1, cl [iii]) "if the arbitrator acted outside the limits authorized by the arbitration agreement, which is the foundation of his authority and jurisdiction, or, where the arbitrator's construction of the agreement is completely irrational and, in effect, makes a new contract for the parties *(Lentine v. Fundaro,* 29 NY2d 382, 385; *Matter of Granite Worsted Mills [Cowan],* 25 NY2d 451, 456-457; *Matter of National Cash Register Co. [Wilson],* 8 NY2d 377, 383)" *(Matter of Fayetteville-Manlius Cent. School Dist. [Fayetteville-Manlius Teachers Assn.],* 51 AD2d 91, 92, revd on other grounds on dissenting opn 41 NY2d 818). We conclude that the arbitrator's imposition of ex post

---

2. None of the opinions in *Cohoes* makes clear why the parties believed that the reinstatement would have the effect of conferring tenure. It seems likely that they had in mind subdivision 2 of section 2509 of the Education Law which can be read to mean that teachers employed beyond the expiration of the probationary period receive tenure rights by operation of law even if they have not been recommended for tenure.

facto procedural standards for the evaluation of the grievants was tantamount to the making of a new contract for the parties, and was therefore in excess of his powers. To be distinguished are cases (e.g., *Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167) which have approved temporary reinstatements of probationary teachers for re-evaluation in compliance with procedures expressly and specifically detailed in collective bargaining agreements.

Thus, with respect to respondent Skeels, who was terminated at the end of her probationary period, the award should be vacated because it was violative of public policy insofar as it rested upon substantive grounds, and based upon an irrational interpretation of the contract insofar as it rested upon procedural shortcomings in the evaluation. The same conclusion could be reached alternatively by reliance on *Matter of Candor Cent. School Dist. (Candor Teachers Assn.)* (52 AD2d 400), where it was held that a probationary teacher's failure to achieve tenure was not an arbitrable dispute under a "just cause" dismissal clause, for the reason, *inter alia,* that "[h]er employment ceased by operation of law at the end of her probationary period and not by a dismissal by petitioner" *(id.,* p 402). (See *Matter of Kepp v Springville-Griffith Inst. Cent. School Dist.,* 55 AD2d 1033.)

In the case of respondent Simpson, the award was properly confirmed. Since she was terminated during the probationary period and not at the end thereof, the public policy objection recognized in *Cohoes (supra)* does not apply to her case. The court there expressly recognized that "a board may legally agree * * * to limit or forego its right to discharge a probationary teacher during the period of probation", and asserted that it had "no difficulty with the [clause] of the collective bargaining agreement that * * * prohibited discharge without just cause during the probationary period" *(Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774, 777, *supra).*

The judgment of Special Term should be reversed insofar as it confirmed the award to respondent Skeels, and the motion to vacate that award granted. Insofar as Special Term's judgment confirmed the award to petitioner Simpson, it should be affirmed.

MARSH, P. J., MOULE, CARDAMONE and SIMONS, JJ., concur.

Judgment unanimously modified in accordance with opinion by GOLDMAN, J., and as modified affirmed, without costs.