COUNTY OF ONTARIO, Respondent, v FACULTY ASSOCIATION OF THE COMMUNITY COLLEGE OF THE FINGER LAKES, Appellant.

Fourth Department, February 18, 1977

*Martin D. Schulman* for appellant.

*Harris, Beach & Wilcox (Peter Spinelli* of counsel), for respondent.

GOLDMAN, J. The Faculty Association of the Community College of the Finger Lakes appeals from an order which,

upon the petition of the County of Ontario, partially vacated an arbitral award. The award directed the county to install the grievant, Marinus Lockemeyer, in the position of director of physical plant and security for a one-year term beginning September 1, 1975, at a salary of $15,430, in accordance with a letter of agreement signed by Lockemeyer on July 25, 1975.[1] Special Term vacated the award to the extent that it required Lockemeyer to be installed in the position and to be paid the specified salary after October 30, 1975. It was on that date that the Ontario County Board of Supervisors passed a resolution which purported to delete the "Director of Physical Plant and Security" position from the college's budget, to reinstate Lockemeyer's former position of "Superintendent of Buildings and Grounds" at a salary of $14,258, and to reappropriate the difference of $1,172 to another item.

The respondent county contends that the arbitrator exceeded his power because no provision of the collective bargaining agreement placed any restriction on the county's power to amend the budget, nor authorized the arbitrator to review the exercise of that power.

The facts which culminated in the arbitration are not in dispute. The grievant, Lockemeyer, has been continuously employed by the college since September, 1973, when he was hired as superintendent of buildings and grounds. That position was not within the faculty association bargaining unit. As the college's new and larger campus neared completion during the 1974-1975 academic year, the college's board of trustees decided to establish the new professional title of director of physical plant and security. The statutory procedures were regularly followed, and on June 16, 1975 the county board of supervisors passed the 1975-1976 Community College budget, which included an individual line item of $15,430 for director of physical plant and security. On July 14, 1975 the grievant was appointed to that position by a resolution of the college's board of trustees. By letter dated July 15, 1975 the board of trustees offered the grievant the one-year professional contract to which reference has been made. The grievant accepted on

---

1. The letter agreement itself does not appear in the record, but its existence and terms are undisputed. The arbitrator's opinion describes the agreement as being "between the grievant and College" and providing for a term of one year to begin on September 1, 1975, at a salary of $15,430. The cross petition to confirm the award, in apparent reference to the letter agreement, speaks of "a one year professional contract offered by the Board of Trustees".

July 25, 1975, and on September 1, 1975 he assumed his new duties. Upon receipt of his first pay check in late September, 1975 he discovered that he was being paid at less than an annual rate of $15,430. After fruitless discussions with college administrators, Lockemeyer filed a grievance on October 9, 1975 pursuant to a collective bargaining agreement between the faculty association and the county board of supervisors. The grievance was regularly processed through the four-step grievance procedure provided in the agreement, culminating in "binding" arbitration. Meanwhile, on October 30, 1975 the board of supervisors had passed the previously described resolution deleting the grievant's new job title from the college's budget.

The submission to the arbitrator, which was drafted by the county, reads as follows:

"Has the county violated its labor agreement with the faculty association by failing to employ the grievant under the title 'Director of Physical Plant and Security' and failing to pay the grievant the twelve months' salary amount of $15,430. If so, what shall the remedy be?"

The arbitrator's award was made on April 15, 1976. It was accompanied by an opinion in which the arbitrator expressly decided, among other things, the following: that the position of director of physical plant and security was within the bargaining unit; that the grievant became lawfully and properly installed in that position on September 1, 1975 and thereby gained the right to file a grievance; "that the board of supervisors did not have the authority to abolish the grievant's position once it had been properly established, approved and funded"; and that a special resolution of the board of supervisors approving the new position was not legally required, the grievant having accepted a clear and unconditional job offer.

The county does not challenge the arbitrator's conclusions that the new position was validly created and the grievant validly installed therein as of September 1, 1975. Those conclusions, the county concedes, "involved questions of fact or law which may not be disturbed even if erroneous". The county does contend, however, that the arbitrator "exceeded his power" (CPLR 7511, subd [b], par 1, cl [iii]) by requiring that the grievant be maintained in the new position after the college budget had been amended by a resolution of the board of supervisors. Recently, in *Pavilion Cent. School Dist. v Pavilion Faculty Assn.* (51 AD2d 119, 122-123, mot for lv to

app dsmd 40 NY2d 845) we stated: "[T]here are two basic factors to be considered in determining whether an arbitrator has acted in excess of his power; first, was the construction given the contract document by the arbitrator completely irrational *(Lentine v Fundaro* [29 NY2d 382, 385]; *Matter of National Cash Register Co. [Wilson],* 8 NY2d 377, 383), or, second, did the contract agreement itself expressly limit the power of the arbitrator *(Lentine v Fundaro, supra,* pp 385-386; *Matter of Granite Worsted Mills [Cowen]* [25 NY2d 451, 456-457])? In effect, the question is whether the arbitrator merely interpreted the existing agreement or did he, in fact, give a completely irrational construction to the provisions in the disposition and thereby make a new contract for the parties *(Matter of National Cash Register Co. [Wilson], supra,* p 383)". The county notes certain provisions of the collective bargaining agreement which, it says, expressly limited the arbitrator's power. Among these is subdivision 2.1 of section 2 of article XIII, which defines a grievance as "any claimed violation, misrepresentation or inequitable application of any of the terms and conditions of this agreement". Another such provision is section 2 of article XXIII which states: "This Agreement shall constitute the full and complete commitment between the parties, and no verbal statement or other agreement, except an amendment in writing and annexed hereto and designated as an amendment to this agreement shall supersede or vary the provisions herein".

The county also notes that the arbitrator's opinion contains this language: "In order for the county or the college to change [the grievant's] salary, they must deal through the association and bargain the modification. That required bargaining did not take place in the instant case". This finding, the county contends, contravenes the collective agreement's provision that "negotiations will not be reopened on any item whether contained herein or not during the life of this agreement" (art XXIII, § 3). Finally, the county relies on article XVI, entitled "Management Rights", which provides in part as follows: "The Board of Supervisors and the Board of Trustees, separately and collectively, hereby retain the sole right to manage the College, its businesses and services, including but not limited to * * * the right to determine whether and to what extent the work required in operating the business and supplying the services shall be performed by employees covered by this agreement * * * subject only to such regulations

governing the exercise of these rights as are expressly provided in this agreement, or provided by law. * * * Any and all rights, powers and authorities held prior to entering this agreement are retained by the Board of Supervisors and the Board of Trustees, except as expressly and specifically abridged, delegated, granted or modified by this agreement."

Declaring that "The County of Ontario's power to amend the budget of The Community College is in no manner contractually limited", the county concludes that the arbitrator's award was not based on an interpretation of any language in the collective bargaining agreement, so that in effect he added a "job security" clause to the agreement, thereby exceeding his powers. For the proposition that "job security provisions may be agreed to by a public employer, but they cannot be implied by an arbitrator", the county invokes, *inter alia,* two recent decisions of ours, namely, *Board of Educ. of Newfane Cent. School Dist. v Newfane Teachers Assn.* (54 AD2d 1119), and *Board of Educ. of Cent. School Dist. No. 1 of Towns of Niagara, Wheatfield, Lewiston and Cambria v Niagara Wheatfield Teachers Assn.* (54 AD2d 281, mot for lv to app den 41 NY2d 801 [Feb. 10, 1977]).

In *Newfane,* Special Term stayed arbitration of a grievance arising from the abolition of teachers' positions, on grounds that the notice of intention to arbitrate was inadequate to enable the court to determine whether the dispute was arbitrable. In affirming we stated: "The board suspects, and the association denies, that the matter in dispute involves a reduction in force by the board and a claim of job security rights by the association, matters on which the parties have not bargained and which are, therefore, not subject to arbitration (see, Matter of Board of Educ. v. Yonkers Federation of Teachers, 40 NY2d 268; Matter of Burke v. Bowen, 40 NY2d 264; Yonkers School Crossing Guard Union v. City of Yonkers, 39 NY2d 964)". However, *Niagara Wheatfield* made clear that a "job security" clause is not the only contractual language that can authorize an arbitrator to entertain a grievance arising out of the abolition of a position. There the grievant was a nurse-teacher whose position was abolished after the school budget was defeated by the electorate. Although we deemed it "clear that the parties did not agree on job security protection in this contract and did not agree to invest an arbitrator with a general power to review dismissals resulting from the abolition of positions", the dispute was nevertheless

held a proper one for arbitration under a provision in the collective bargaining agreement that "no teacher shall be dismissed without just cause" (54 AD2d, at p 283).

In the instant case, the collective bargaining agreement contains neither a "job security" clause nor a "just cause" dismissal clause. However, the "management rights" clause, which was specifically urged upon the arbitrator by the county, does provide that the management rights of the board of supervisors and the board of trustees are "subject * * * to such regulations governing the exercise of these rights as are * * * provided by law" (art XVI, § 1). This provision is rationally susceptible of an interpretation whereby the arbitrator is authorized to refer to statutory law to determine whether the grievant's position was lawfully abolished. In light of the strong presumption of arbitrability in matters of labor relations, we conclude that the arbitrability of the present grievance should be upheld. In contrast to commercial arbitration agreements, where a clear expression of intent to submit a particular issue to arbitration is required, the rule in construing collective bargaining agreements is that " 'only where the parties have employed language which clearly rebuts the presumption of arbitrability,' e.g., explicitly excluding a certain matter from arbitration, may the matter be held nonarbitrable and thus subject, in the final analysis, to judicial determination" *(Matter of Howard & Co. v Daley,* 27 NY2d 285, 289-290, quoting *Matter of Long Is. Lbr. Co. [Martin],* 15 NY2d 380, 385; see, also, *Matter of British Overseas Airways Corp. v International Assn. of Machinists & Aerospace Workers, AFL-CIO,* 39 AD2d 900, 901 [EAGER, J., dissenting], revd on dissent below 32 NY2d 823).

That the arbitrator did refer to pertinent statutory law is plain from his finding that "The analysis of the relevant law presented in the Association's brief is persuasive in support of its argument that the Board of Supervisors did not have the authority to abolish this grievant's position once it had been properly established, approved, and funded". Elsewhere in his opinion, under the subheading "Position of the Parties: the Association", the arbitrator summarized one of appellant's arguments as follows: "3. When the grievant received and accepted the offer of the new position at a specific salary, this salary and acceptance constituted a contract that cannot be altered unilaterally. After the county supervisor had reviewed and adopted the college budget including the new line item

and pay, the new job was officially established." The arbitrator's finding that the board of supervisors lacked authority to abolish the position is consonant with pertinent provisions of the County Law. Section 363 of that law authorizes the board of supervisors to make additional appropriations or increase existing appropriations during a fiscal year by taking funds "from any unencumbered balances in appropriations". Section 364 of the County Law provides that the board may, by resolution, "at any time reappropriate for any lawful purpose all or any part of the unencumbered balance of an existing appropriation". The clear implication of these two sections is that the board of supervisors may not reappropriate funds from existing appropriations which are fully encumbered. Here the college's operating budget, prior to the amendment, contained an individual line item for "Director of Physical Plant/Security at $15,430". That item became fully encumbered when the college contracted with the grievant to fill the position, after which the sum of $15,430 could not be lawfully reappropriated.

Lastly, the county contends that the relief awarded by the arbitrator is irrational. We do not agree. The award was clearly rational, for it simply required that the grievant's employment contract be enforced according to its terms, after the arbitrator found that the contract had been violated.

The order should be reversed and the cross petition to confirm the award should be granted.

MARSH, P. J., MOULE, CARDAMONE and WITMER, JJ., concur.

Order unanimously reversed, with costs, cross petition granted and award confirmed.