Wachtler, J.
In a proceeding to vacate an arbitration award the petitioner, Rochester City School District, claims that the arbitrator appointed pursuant to a collective bargaining agreement "exceeded his power” (CPLR 7511, subd [b], par 1, cl [iii]) in the course of resolving a dispute over sabbatical leaves. Special Term vacated the award and denied a cross motion to confirm it. The Appellate Division affirmed and we granted leave to appeal upon the motion of the respondent, Rochester Teachers Association.
The parties entered into a collective bargaining agreement for the school years beginning July 1, 1971 and ending June 30, 1973. Section 34.5 of the agreement provides that "Regularly appointed teachers who have served for five (5) years may upon the recommendation of the Superintendent and with the approval of the Board, be granted leave of absence for study or travel upon” certain conditions. The agreement also established a four "stage” procedure for the resolution of any grievance which is defined as "a claim based upon an event or condition which affects the conditions or circumstances under which a teacher works, allegedly caused by misinterpretation or inequitable application of established policy or the terms of this agreement.” The first three stages involve meetings with the teacher’s immediate supervisor, the superintendent of schools and the board of education. The fourth stage provides for binding arbitration. The agreement states "if the teacher and/or Association are not satisfied with the decision at Stage 3, and the Association determines that the grievance is meritorious, it may submit the grievance to arbitration. * * * The decision of the arbitrator shall be final and binding upon all parties.”
During the 1972-1973 school year 36 teachers applied for sabbatical leave. In each case the teacher received a form letter which states "Your application has been considered, but as an economy measure, among other reasons, the Superintendent of Schools is not recommending to the Board of Education your request for a sabbatical leave for the 1973-74 *580 school year.” On April 19, 1973 the Teachers Association filed a group grievance claiming that the action of the district and the board of education violated section 34.5 of the collective bargaining agreement. The association was unsuccessful during the initial stages of the grievance procedure. At the third stage the association was informed in writing that "it is the determination of the Board of Education that the language in the current collective bargaining agreement regarding the granting of sabbatical leaves is permissive and does not confer any contractual right to sabbatical leaves upon the employees. Under the current language, the Superintendent may or may not recommend the granting of sabbatical leaves. Because of the severe financial situation facing the City School District, the Superintendent has determined not to grant any sabbatical leave requests for the 1973-74 school year and we concur with the determination.” (Emphasis in original.)
The association then demanded arbitration and the following questions were submitted by the parties:
"1. Did the Rochester City School District violate Section 34.5 of the collective bargaining agreement between the parties in denying all sabbatical leaves for the 1973-74 school year?
"2. If such a violation is found, what remedies in the judgment of the arbitration shall be provided?”
After conducting hearings the arbitrator found that the grievance had been sustained. The use of the term "may” he stated, "indicates discretion”, but has been variously interpreted depending upon the intention of the parties. He recognized that in one case, an article 78 proceeding involving an identical provision and a similar controversy, the court had held the clause to be permissive (see Matter of Deedy v Board of Educ., 41 AD2d 965, mot for lv to app den 33 NY2d 515). However, he did not feel bound by that ruling in an arbitration forum and, in any event, in his view it did not resolve the question as to what these parties intended the contractual language to mean under the circumstances of this case.
This particular provision, he noted, had first been adopted by these parties in a 1965 collective bargaining agreement and since that time "even when the District had been in the throes of financial crisis, sabbatical leaves were consistently and uniformly granted under the terms of the provision.” In fact the school district had actively broadcast the advantages of its leave policy in teacher recruitment literature and had, *581 in the 1971 agreement granted the teachers’ demands for additional benefits by relaxing the conditions and increasing by 10% the amount of compensation paid to teachers on leave. Thus, looking to the past practice followed by the parties, to find intent, the arbitrator concluded that it was contemplated that the school district would be bound to grant some sabbaticals despite financial difficulties. He directed that the school district grant sabbaticals to those eligible teachers who applied for leave in the 1973-1974 school year "to a total of no more than 1% of the total teachers employed”.*
The school district then commenced this proceeding to vacate the award claiming that the arbitrator "exceeded his power” (CPLR 7511, subd [b], par 1, cl [iii]). The petition alleges that under the collective bargaining agreement the granting of sabbatical leave is discretionary and that in holding to the contrary the arbitrator ignored (1) "the express contractual language” and (2) the decision in Deedy (supra), "a ruling on the specific issue before him”. Thus, it concludes, the arbitrator exceeded his power by modifying or altering the agreement in violation of the arbitration clause which states "The arbitrator shall have no power or authority to make any decision which * * * adds to, deletes from, or in any way changes, alters or modifies the terms of the Agreement.”
Special Term recognized that an arbitrator’s award cannot be set aside for "mere error” of law. But it concluded that here the arbitrator had in fact exceeded his powers because he disregarded an express contractual provision (Matter of Granite Worsted Mills [Aaronson Cowen, Ltd.], 25 NY2d 451). Specifically it held that the leave provision involved a "discretionary procedure” and when "the arbitrator construed this provision as a mandatory requirement on the part of the employer, he changed a provision of a negotiated contract *582 which he had no power to do.” The Appellate Division later affirmed, without opinion.
Once a party has participated in arbitration his ability to have the courts vacate or modify the award is limited by statute (CPLR 7511, subd [b], par 1; see, also, CPLR 7511, subd [c]). An award of course may be vacated on the ground that the arbitrator "exceeded his power” (CPLR 7511, subd [b], par 1, cl [iii]). But when the arbitrator has been authorized to resolve disputes regarding the interpretation of the contract, we have held that his determination will only be set aside on this ground if it is "completely irrational” (Matter of National Cash Register Co. [Wilson], 8 NY2d 377, 383), "or where the document expressly limits or is construed to limit the powers of the arbitrators, hence, narrowing the scope of arbitration (Matter of Granite Worsted Mills [Cowen] 25 N Y 2d 451, supra, at pp. 456-457)” (Lentine v Fundaro, 29 NY2d 382, 385).
Although the courts will not disturb an arbitrator’s award because of his failure to interpret documents literally or in accordance with substantive principles of law or rules of evidence (see, e.g., Matter of National Cash Register Co. [Wilson], 8 NY2d 377, 383, supra) his power to fashion a remedy is not unlimited. If the arbitrator’s award is "completely irrational” it may be considered misconduct on his part or it may be said that he exceeded his power. The relief which he fashions is circumscribed by the bounds of the relationship between the parties.
In the final analysis "Arbitrators may do justice” and the award may well reflect the spirit rather than the letter of the agreement (Lentine v Fundaro, supra, at p 386). Thus courts may not set aside an award because they feel that the arbitrator’s interpretation disregards the apparent, or even the plain, meaning of the words or resulted from a misapplication of settled legal principles. In other words a court may not vacate an award because the arbitrator has exceeded the power the court would have, or would have had if the parties had chosen to litigate, rather than arbitrate the dispute. Those who have chosen arbitration as their forum should recognize that arbitration procedures and awards often differ from what may be expected in courts of law.
The courts’ power to intervene is even more restricted when the arbitrator’s interpretation of the agreement resolves the question submitted, and not merely one aspect of the dispute. Here of course the arbitrator’s determination of the meaning *583 of the sabbatical leave provision was not a purely incidental aspect of the award. It resolved the primary question submitted and if he did not have the authority to decide that question there was nothing for him to arbitrate. A party who has participated in arbitration cannot later seek to vacate the award on the ground that the controversy was not arbitrable (Matter of National Cash Register Co. [Wilson] supra, at p 382). By statute that question must be raised before arbitration, and if it is not it is deemed to be waived (CPLR 7503). Obviously a party may not avoid this restriction by later arguing that the award should be vacated on the ground that the arbitrator "exceeded his power” by construing the agreement when it was clear on its face and required no interpretation. In other words CPLR 7511 (subd [b], par 1, cl [iii]) is limited in scope. A party may claim that the arbitrator exceeded his authority in some respect, but he may not argue that the arbitrator lacked the power to resolve the question submitted. Significantly this argument could not have prevailed even if it had been raised in a timely fashion, in view of the fact that the arbitrator had been granted broad power to resolve any "claim * * * [of] misinterpretation or inequitable application of * * * the terms of this agreement” (see, e.g., Matter of Nationwide Gen. Ins. Co. v Investor’s Ins. Co. of Amer., 37 NY2d 91).
The arbitrator, then, had the power to interpret the sabbatical leave provision and the only question is whether his interpretation is "completely irrational” (Matter of National Cash Register Co. [Wilson] supra, p 383; Lentine v Fundaro, supra). Obviously it was not irrational for him to conclude that the parties’ conduct in the past, under similar agreements, demonstrated their intent or expectations. There was, as noted, uncontradicted proof that despite financial difficulties the school district had consistently and publicly granted sabbatical leaves. Thus it was not unreasonable to find that by renewing the agreement the parties intended to continue the practice followed in the past.
We recognize that school districts and boards of education traditionally, and perhaps properly, retain the absolute discretion to grant or deny applications for leave. The power in fact is expressly granted by statute (Education Law, § 1709, subd 16; § 2554). Surrender of the power, or part of it, to the courts or arbitrators in collective bargaining agreements may later prove to be inconvenient or may even disrupt the normal *584 functioning of the school district in some respects. There is no doubt that this is the school districts’ responsibility, but it would have been more appropriate if they had recognized this responsibility by asserting their rights at the bargaining table. As it stands, they chose to negotiate the point and agreed to exercise their discretion in a certain manner, or so the arbitrator could find.
The order of the Appellate Division should be reversed, without costs; the petitioner-respondent’s motion to vacate the arbitration award should be denied and the appellant’s cross motion to confirm the award should be granted. The court has denied costs because of the excessive length of appellant’s brief (see, e.g., Slater v Gallman, 38 NY2d 1; see, also, Ball v State of New York, 41 NY2d 617).
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order reversed, etc.

 This portion of the award reads as follows:
"(a) All persons who had applied for sabbatical leave for the 1973-74 school year and upon a denial thereof elected and were granted a leave of absence without pay, shall be placed on sabbatical leave under Article 34.5 for the 1973-74 school year, retroactive to September 1, 1973.
"(b) The Board shall choose, in accordance with Article 34.5, those eligible for sabbatics from the applicants for 1973-74 leave, to a total of no more than 1% of the total teachers employed including those contained in the above sub-division (a), and such persons shall be entitled to sabbatical leave for the 1974-75 school year, without prejudice to the rights and obligations the parties have under the terms of their contract in connection with application for sabbatical leave for the 1974-75 school year.”