16-1324-cv
*Tully Construction Co., A.J. Pegno Construction Co., J.V. v. Canam Steel Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand seventeen.

Present:
> ROBERT D. SACK,
> DEBRA ANN LIVINGSTON,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges.*

_____

TULLY CONSTRUCTION CO., INC., A.J. PEGNO
CONSTRUCTION CO., J.V.,

> *Petitioners-Cross Defendants-Appellees*,

> v.                                              16-1324

CANAM STEEL CORP.,

> *Respondent-Cross Claimant-Appellant.*

_____

| | |
|---|---|
| For Petitioners-Cross Defendants-Appellees: | TIMOTHY T. COREY, Hinckley Allen & Snyder LLP, Hartford, CT; Christopher V. Fenlon, Hinckley Allen & Snyder LLP, Albany, NY |
| For Respondent-Cross Claimant-Appellant: | CELIA GOLDWAG BARENHOLTZ, David J. Bright, Cooley LLP, New York, NY |

1

**UPON DUE CONSIDERATION WHEREOF IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Canam Steel Corporation ("Canam") appeals from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*), entered on March 30, 2016, granting the motion of Appellee Tully Construction Company, Inc. ("Tully") to confirm an arbitration award and denying Canam's cross-motion to vacate the award. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

## I.  Background

In 2002, New York State hired Tully to replace a portion of the Whitestone Bridge, a suspension bridge that spans the East River and connects the Bronx and Queens via Interstate 678. Tully hired Eastern Bridge LLC ("Eastern Bridge"), a steel fabricator and non-party to this action, to produce and deliver several million dollars' worth of structural steel for the Project under a "Purchase Order." After disputes arose concerning Eastern Bridge's compliance with the terms of the Purchase Order, Tully and Eastern Bridge entered into a May 15, 2007 "Completion Agreement," which contained a revised delivery schedule and an arbitration clause. Two months later, Eastern Bridge and Canam entered into an "Asset Purchase Agreement," pursuant to which Canam acquired some of Eastern Bridge's assets and liabilities and took over Eastern Bridge's performance in connection with the Whitestone Bridge project.

After disputes arose between Tully and Canam about the timeliness of deliveries, Tully served Canam with a demand for arbitration in April 2008. The parties thereafter entered into a "Delivery Agreement." The Delivery Agreement provided yet another revised schedule and required that Tully deposit money claimed by Canam into an escrow account. In addition, the agreement contained an arbitration clause with a chosen venue of New York. An arbitration

2

eventually ensued. After 17 days of hearings, testimony from 11 witnesses, and the introduction of more than 800 exhibits, Arbitrator John J. Krol issued an Original Award on April 24, 2013 and a Revised Award on June 4, 2015. Krol awarded Tully $6,883,936.00 and Canam $366,914.00. Tully moved to confirm the Revised Award in the district court, and Canam cross-moved to vacate. The district court granted Tully's motion and denied Canam's motion.

## II. Discussion

### A. Standard of Review

"This Court reviews a district court's decision to confirm or vacate an arbitration award de novo for questions of law," and for clear error for findings of fact. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013). "When a party challenges the district court's review of an arbitral award under the manifest disregard standard, we review the district court's application of the standard *de novo*." *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 138 (2d Cir. 2007) (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)).

### B. Motion to Confirm/Cross-motion to Vacate

"Following issuance of an arbitration award, § 9 of the Federal Arbitration Act ('FAA') provides that a party may apply to a district court 'for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [S]ections 10 and 11 of this title.'" *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (quoting 9 U.S.C. § 9). A party moving to vacate an arbitration award has a "very high" burden of proof to avoid confirmation. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). Indeed, courts "play only a

3

limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "[O]nly a 'very narrow set of circumstances delineated by statute and case law' permit vacatur." *Porzig*, 497 F.3d at 138 (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003)). Under Section 10 of the FAA, an arbitration award may be vacated if, *inter alia*, it was procured by corruption or fraud, or the arbitrators "exceeded their powers." 9 U.S.C. § 10(a). The Second Circuit recognizes two additional bases for vacatur: if the award "was rendered 'in manifest disregard of the law,'" *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010)), or "the terms of the [parties' relevant] agreement[s]," *id.* at 452 (second alteration added) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)). However, only "a barely colorable justification for the outcome reached" by the arbitrator is necessary to confirm the award. *Landy Michaels Realty Com. v. Local 32B-32J, Service Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

### 1. Manifest Disregard

On appeal, Canam claims that the arbitrator's award was rendered in manifest disregard of the law and the terms of the parties' relevant agreements. First, Canam contends that the arbitrator disregarded an order issued by the New Hampshire Superior Court ("NH Order") in connection with a declaratory judgment suit commenced by Canam in December 2009. The order states that, as between Canam and Eastern Bridge, Canam did not assume liability for any breach of contract that occurred prior to the signing of the Asset Purchase Agreement on July 16,

2007.[1] The NH Order also included language about the impact of the Delivery Agreement on the APA. Arbitrator Krol declined to afford this language preclusive effect in the arbitration under res judicata or collateral estoppel principles because it was "properly considered superfluous obiter dicta." J.A. 242 (citing *Pollicino v. Roemer & Featherstonhaugh P.C.*, 277 A.D.2d 666, 668 (N.Y. App. Div. 3rd Dep't 2000) ("Language that is not necessary to resolve an issue, however, constitutes dicta and should not be accorded preclusive effect[.]")). The district court concluded that there was "ample support for the arbitrator's ruling" on this issue, citing the NH Order's explicit limitation to contractual relationship between Eastern Bridge and Canam. S.P.A. 55. We agree. On appeal, Canam repeats arguments that it made to the district court and does not engage with the authority that the arbitrator cited. And even if Canam could persuade this Court that the arbitrator made a legal error, manifest disregard "clearly means more than error or misunderstanding with respect to the law." *Wallace*, 378 F.3d at 189. We see no reason to disturb the district court's conclusion.

Second, Canam argues that the arbitrator manifestly disregarded the terms of the "Letter Agreement" between the parties, an allegedly binding contractual modification that extended the steel delivery schedule for the project. According to Canam, the arbitrator miscalculated the length of Canam's delay and overestimated Tully's damages as a result. Tully responds, as it did during the arbitration, that the Letter Agreement was nothing more than an agreement-to-agree and is therefore unenforceable under New York law. The district court stated that "the effect of the Letter Agreement on the parties' obligations was a matter for the arbitrator to decide based on the evidence before him," and that, upon review, there is no

---

[1] The New Hampshire Supreme Court affirmed the NH Order, stating that "this litigation is limited to resolving the dispute between Canam and Eastern Bridge under the terms of the [APA]." J.A. 162.

5

evidence in the record suggesting that there is "no colorable justification for the arbitrator's decision." We again agree. The Letter Agreement contains qualified terms such as "Canam's proposed agreement," an "agreement in principle," and "tentative" delivery dates. J.A. 86. In addition, the agreement itself states that the parties "agree to adopt an agreement," J.A. 87, and that the "change of delivery schedule is without prejudice to Tully's expectation that the steel would be delivered pursuant to the time frame included in [the 2003 Purchase Order]." J.A. 86. In such circumstances, we cannot conclude that "the arbitrator[] so misread [the Letter Agreement's] provisions as to empower a court to set aside the award." *Nat'l Cash Register Co. v. Wilson*, 8 N.Y.2d 377, 383 (1960); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) ("When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." (quoting *Misco*, 484 U.S. at 39)).

Third, Canam claims that the arbitrator had no basis to impose pre-APA liability on Canam. Canam points to Section 2.03(ii) of the APA, in which the buyer (Canam) assumed the obligations of the seller (Eastern Bridge) under the "Contracts . . . (*other than* liabilities or obligations attributable to any failure by Seller[, Eastern Bridge,] to comply with the terms thereof)." J.A. 310. But even assuming, *arguendo*, that construing this provision in the APA to permit the imposition of pre-APA liability on Canam would be in manifest disregard of the law, it is not clear that the arbitrator even imposed pre-APA liability on the Appellant. Canam's speculation about why the arbitrator awarded varying percentages of each of Tully's claims provides no basis for concluding that the arbitrator manifestly departed from the terms of the parties' agreements. Indeed, there are many reasons that the arbitrator might have decided

6

to award a certain amount of each claim: whether the alleged damages were "a result of non-concurrency, were not foreseeable, were not anticipated, are excusable, and are compensable." J.A. 544. Moreover, variation in the credibility and amount of evidence of damages could have resulted in more or less being awarded for certain claims. The arbitrator, based on the extensive evidence before him, concluded that Canam's breach was responsible for some of Tully's claimed damages and awarded Tully the amount he believed it was due. And to the extent that Canam is arguing that the arbitrator "manifestly disregarded" the evidence that Eastern Bridge was actually liable for Tully's damages, we agree with the district court that this Circuit "'does not recognize manifest disregard of the evidence as [a] proper ground for vacating an arbitrator's award.'" *Wallace*, 378 F.3d at 193 (quoting *Success Sys., Inc. v. Maddy Petroleum Equip., Inc.*, 316 F. Supp. 2d 93, 94 (D. Conn. 2004)).

### 2. Reasoned Award

Canam next claims that the arbitrator did not issue a reasoned award. A reasoned award is something short of findings of fact and conclusions of law but more than a simple result. *Leeward Constr. Co., Ltd. v. Am. U. of Antigua–Coll. of Med.*, 826 F.3d 634, 640 (2d Cir. 2016). In other words, it requires

> something more than a line or two of unexplained conclusions, but something less
> than full findings of fact and conclusions of law on each issue raised before the
> panel. A reasoned award sets forth the basic reasoning of the arbitral panel on
> the central issue or issues raised before it. It need not delve into every argument
> made by the parties.

*Id.*

7

Canam argues that the arbitrator did not explain (1) the fact that he awarded 53.125 percent of the damages for two of Tully's claims and higher percentages on two others and (2) why he rejected Canam's defense that "Canam had no pre-APA liability to Tully by virtue of New Hampshire law and the APA." Blue Brief at 44. The district court concluded that the arbitrator sufficiently explained why he awarded certain amounts on each claim. We agree. The arbitrator "need not delve into every argument made by the parties" in order to issue a reasoned award. *Leeward*, 826 F.3d at 640. Any award that "set[s] forth . . . the key factual findings supporting its conclusions" is a reasoned award. *Id.* Here, the arbitrator laid out a factual history of the parties' dealings, and—after concluding that Canam delivered material late—discussed why Tully was entitled to damages on some claims and not others. In sum, the arbitrator issued a reasoned award.

### 3. Damage Calculation

Finally, the arbitrator awarded Tully $6,517,022, the "initial award . . . less the amount that Claimant may now reimburse itself from escrow (approximately $961,100.00), with interest on the remaining amount; . . . ." J.A. 552. Canam argued to the district court that the "initial award" should be reduced by the principal amount in escrow ($961,100.00) *and* accrued interest, and that the interest should be calculated at the time the money is withdrawn from the escrow account. Tully, in contrast, argued that the "initial award" should be reduced by the principal alone. The district court concluded that "there [wa]s no interpretation of [the Delivery A]greement under which Canam Steel Corp. would be entitled to the interest earned on the escrowed funds." J.A. 809. Thus, Canam was entitled to a credit equivalent to only the principal amount in the escrow, not the interest. *Id.*

8

On appeal, Canam argues that the district court found ambiguity in the arbitrator's language where none existed. According to Canam, the "plain language" of the arbitrator's order indicates that the "initial award" should be reduced by the total amount in the escrow account at the time of withdrawal. We disagree. The arbitrator did not state that Tully may reimburse itself with everything in the escrow account at the time the money is withdrawn, but rather that Tully was entitled to "the amount that [it] *may now* reimburse itself from escrow." J.A. 552. In addition, the arbitrator clarified that the amount was $961,100.00. We agree with the district court that giving the interest earned on the Escrow Fund to Canam in the form of a credit contravenes the Delivery Agreement. Therefore, Canam is entitled to reduce the amount it owes to Tully by only the principal in the escrow account.

## III. Conclusion

We have considered Canam's remaining arguments and find them to be moot or without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk