In the Matter of the CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., STEUBEN COUNTY CHAPTER, Appellant, v COUNTY OF STEUBEN, Respondent.

Fourth Department, January 16, 1976

*James T. Hancock* for appellant.

*Bond, Schoeneck & King (Thomas J. Grooms, Raymond W. Murray* and *Henry H. Melchor* of counsel), for respondent.

MAHONEY, J. Petitioner-appellant (CSEA) appeals from an order which denied its application for an order confirming an arbitrator's award and granted respondent's (County) cross petition for an order vacating the award. Under the terms and conditions of a public employment contract (Agreement) between CSEA and the County, specific provision was made for employees' travel reimbursement expense: In connection therewith it was specifically provided:

"1. Headquarters of all County Officers and Employees shall be designated as the administrative office of the department in which such officer or employee is employed. In some cases field offices of certain departments may be designated for the convenience of the County as the Headquarters for an employee. Such designation shall be made in writing by the Department Head and shall be filed in the office of the County Treasurer.

"2. In the event that an employee or officer travels directly

from home to a field assignment, he shall be reimbursed for the mileage from his home or from assigned headquarters, whichever is the less.

"3. Travel between home and [department] headquarters shall be considered reimbursable only when the County business is conducted en route, and then only for the amount of those miles driven in excess of the miles necessary for the employee or officer to reach department headquarters. Travel between home and headquarters shall be reimbursed if County business requires extra trips."

It was also provided that the Agreement constituted the entire contract between the parties and that no verbal statement or other agreement, except an amendment in writing annexed thereto and designated as an amendment to the Agreement, shall supersede or vary the provisions thereof. Grievance procedure was also contained in article XVIII, with provision for submission of unresolved grievances to arbitration. In connection therewith it was specifically provided that the arbitrator shall have no power to subtract from or modify any of the provisions of the Agreement.

Against this contractual background, prior to December 13, 1973 the County was paying association member case workers, food stamp employees and a supervising case worker of the Department of Social Services mileage reimbursement from their respective homes to their various assigned case clients located throughout the County, even though their homes had not been designated as departmental "field offices" in a writing filed with the County Treasurer as contractually provided. As a result of this practice the employees were paid for mileage without reference to their Bath office headquarters and for travel between their homes and the Bath office, irrespective of whether County business was conducted en route or whether County business required an extra trip. A department memorandum dated December 13, 1973, addressing attention to the prevailing gasoline shortage situation existent at that time, advised that, effective December 17, 1973, the official station of all employees would be the Bath office and that mileage would not be reimbursable prior to that point, with implementing reference being directed to the mileage reimbursement provisions contained in section 17 of the CSEA Agreement quoted above.

The CSEA thereafter instituted a grievance proceeding pursuant to article XVIII of the Agreement which culminated

in a binding arbitration proceeding for resolution of the respective contentions of the parties. It was the position of CSEA that, by virtue of "past practice" relative to mileage reimbursement policy in allowing mileage computation from the subject employees' respective homes, the contract provisions in relation thereto as provided under section 17 of the Agreement were, in effect, modified and changed and that the department's memorandum of December 13, 1973 constituted an impermissible unilateral change in the terms and conditions of the Agreement. The County's position was that the contractual provisions contained in the Agreement specifically prohibited payment of mileage from employees' homes to a work site and that such payment of mileage was "contrary to the provisions of the County Law" (§ 203). The arbitrator, relying on "past practice", determined that the County Commissioner's authority to change travel expense rules was thus limited and that the directive memorandum of December 13, 1973 constituted a violation of the Agreement between the parties, warranting an award of the requested relief to CSEA. As to the County's second contention relative to the alleged statutory proscription of such mileage payments under the provisions of the County Law, the arbitrator declined to make any determination, deeming it more appropriate for judicial resolution.

The CSEA thereafter moved under CPLR 7510 to confirm the arbitrator's award, and the County cross-petitioned to vacate the award pursuant to CPLR 7511 (subd [b], par 1, cl [iii]) on the grounds that the arbitrator exceeded his power in making the award and that compliance therewith would require the County to violate section 203 of the County Law.

Special Term, in denying CSEA's motion to confirm and granting the County's cross petition to vacate the award, determined that section 17 of the Agreement relative to mileage reimbursement stated the intent of the parties in clear and unambiguous language, rendering immaterial any past practice relative thereto; that as a consequence the arbitrator's award, premised upon such past practice postulate, was in excess of his power; and that any mileage payments in accord with the arbitrator's award would be in violation of section 203 of the County Law. From judgment entered thereon, CSEA appeals.

Preliminarily, it is clear that an arbitrator's award cannot be vacated unless there are grounds found in CPLR article 75

*(Matter of Granite Worsted Mills [Cowan],* 25 NY2d 451, 454). Further, errors of law or fact are not grounds to vacate an arbitrator's decision *(Matter of Associated Teachers of Huntington v Board of Educ.,* 33 NY2d 229, 235; *Matter of Raisler Corp. [N.Y. City Housing Auth.,* 32 NY2d 274, 282; *Lentine v Fundaro,* 29 NY2d 382, 385). One of the permitted grounds for vacating an award, claimed herein, is that the arbitrator exceeded his power (CPLR 7511, subd [b], par 1, cl [iii]).

There are two basic factors which have been considered in determining whether an arbitrator acted in excess of his power. First, was the construction given the contract document by the arbitrator completely irrational *(Lentine v Fundaro, supra,* p 385; *Matter of National Cash Register Co. [Wilson],* 8 NY2d 377, 383) and, second, did the contract agreement itself expressly limit the power of the arbitrator *(Lentine v Fundaro, supra,* pp 385–386; *Matter of Granite Worsted Mills [Cowen], supra,* pp 456–457)? In effect, the questions can be stated as follows: Did the arbitrator merely interpret the existing Agreement or did he, in fact, create a new contract *(Matter of National Cash Register Co. [Wilson], supra,* p 383)?

In the instant case, as provided under article XXI, the written Agreement constituted the entire agreement, there being no annexed identified and designated amendment thereto. The arbitrator, under article XVIII (§ 5, subd b), was specifically denied the power to subtract from or modify the Agreement. Section 17 of the Agreement, pertaining to travel and mileage for County officers and employees, is an unambiguous statement of the agreement between the parties. In his opinion and award, the arbitrator stated that "the mutual intent and meaning of section 17 must be inferred from this long standing past practice". However, this past practice of designating certain employees' residences as their official station for mileage purposes was not related to any specific term in the agreement; nor does it appear that this past practice was a factor which the parties took into account in their negotiations. It is, therefore, obvious that the arbitrator "deliberately and intentionally" considered matters outside the Agreement in arriving at his decision and award and, in effect, wrote a new contract for the parties (see *County of Ontario v CSEA, Ontario County Chapter,* 76 Misc 2d 365, affd 46 AD2d 738).

Having concluded that the arbitrator acted in excess of his

426

power warranting vacatur of his award, we need not here consider the impact of section 203 of the County Law upon the award.

The order should be affirmed.

MOULE, J. P., CARDAMONE, SIMONS and GOLDMAN, JJ., concur.

Order unanimously affirmed, without costs.