■ In the Matter of the Arbitration between ESSEX COUNTY BOARD OF SUPERVISORS, Appellant, and CIVIL SERVICE EMPLOYEES' ASSOCIATION, INC., ESSEX COUNTY CHAPTER, Respondent. (Proceeding No. 1.) In the Matter of the Arbitration between ESSEX COUNTY BOARD OF SUPERVISORS Appellant, and CIVIL SERVICE EMPLOYEES' ASSOCIATION, INC., ESSEX COUNTY CHAPTER, Respondent. (Proceeding No. 2.)—Appeal in proceeding No. 1 from an order of the Supreme Court at Special Term, entered October 21, 1977 in Essex County, which denied petitioner's application to vacate an arbitration award and confirmed said award. Appeal in proceeding No. 2 from an order of the Supreme Court at Special Term, entered December 14, 1977 in Essex County, which denied petitioner's application to vacate an arbitration award and confirmed said award. Both of these proceedings arose out of grievances filed against petitioner as a result of efforts to change its policy regarding payments for employee lunches. In the first proceeding, petitioner had followed a uniform and consistent practice since 1942 of providing a paid lunch allowance of $1.50 for employees of the County's Department of Social

Services on those days when their normal duties required them to be within the county but "on the road" or away from their regular office at mealtime. Petitioner adopted a resolution discontinuing this practice on March 1, 1976. A grievance was filed by respondent on behalf of those employees affected and, following the grievance procedure provided for in the employment contract, the matter was submitted to arbitration. The arbitrator found that the petitioner's discontinuance of the meal benefit was improper in that the benefit was implied as a mutual and continuing agreement under the employment contract then in effect. In the second proceeding, employees of petitioner at the Horace Nye Home and Whallonsburg Home had been provided lunches without charge since 1967. On September 3, 1976, petitioner adopted a resolution discontinuing that practice and placing a charge of $1.40 on each meal. Respondent filed a grievance on behalf of those employees affected by the resolution and, following the grievance procedure, the matter was ultimately submitted to arbitration. The arbitrator found that the discontinuance of the meal benefit violated a binding past practice which had been implicitly incorporated into the collective bargaining agreement. Petitioner moved in two separate proceedings to vacate the arbitration awards on the ground that the arbitrators had exceeded their powers. In both proceedings, the respective petition was dismissed and it was held that the arbitrator had acted within his power in finding the petitioner bound to its past practices. Accordingly, both arbitration awards were confirmed. Petitioner appeals from each order and contends that the arbitrator in each case exceeded his authority by considering matters outside of the labor agreement between the parties and requiring the petitioner to act in a manner contrary to law and public policy. The collective bargaining agreement involved in these two proceedings was the same and contained no express provision protecting the employees' right to a continuation of petitioner's lunch payment policy. There was, however, a section in the agreement which stated: "The rates of pay prescribed in the salary plan represents the gross money salary earned. Employees receiving meals and/or living quarters in connection with their positions shall have charges for the various items of maintenance received deducted from their gross salaries, inclusive of such charges." The arbitrator in each case found this provision ambiguous and looked to the past practices of the parties in order to decide whether or not it applied to the grievances filed regarding payments for lunches (see *County of Ontario v Civil Serv. Employees Assn., Ontario County Ch.,* 76 Misc 2d 365, affd 46 AD2d 738). In each case the arbitrator found that the section did not apply to the lunch payment situations and, since these determinations were not irrational, they must be upheld *(Rochester City School Dist. v Rochester Teachers Assn.,* 41 NY2d 578; *Matter of National Cash Register Co. [Wilson],* 8 NY2d 377). Having decided that the grievance was not covered by any express provision in the contract, the issue to be resolved is whether the arbitrator in each instance had the authority to rule that a past practice could not be discontinued for the duration of the collective bargaining agreement. Several other sections of the contract must be examined in resolving this issue. In an article entitled "Miscellaneous Provisions", a section provided that: "This Agreement shall constitute the full and complete commitments between both parties and may be altered, changed, added to, deleted from or modified only through the voluntary mutual consent of the parties in written and signed amendment to this Agreement." The following two sections were contained in the article entitled "Grievance Procedure": "A 'grievance' is a claim by any employee or group of employees or employer in the negotiating unit

based upon any event or condition affecting their welfare and/or terms and conditions of employment. * * * The arbitrator shall have no power to alter, add to or detract from the provisions of the agreement." Petitioner contends that even though the disputes over lunch payments are a condition of employment and thus within the definition of a "grievance", the mere fact that they are subject to the grievance procedure does not make them arbitrable. According to petitioner, an arbitrator's power is limited by the contract to only those matters which fall within the written agreement, since otherwise he will be in violation of the clause prohibiting him from altering or adding to the agreement. Petitioner further argues that allowing an arbitrator to fashion remedies for noncontractual grievances would violate public policy since it would effectively permit the arbitrator to exercise the power of the public employer. Respondent, on the other hand, maintains that petitioner's reasoning would emasculate the broad definition of grievance contained in this particular contract. Respondent urges us to construe the contract in a manner which will give meaning to all of its provisions and argues that the limitation on an arbitrator's power means only that he is bound by the express provisions of the agreement and cannot change them. This interpretation would free the arbitrator to resolve an unlimited number of employee disputes not specifically addressed by the collective bargaining agreement. We agree with the respondent's position. When a large number of individuals are employed by an employer, it is obvious that a wide range of employee complaints will arise. These complaints will invariably include matters which do not fall within particular provisions of the collective bargaining agreement. While we cannot infer that parties to a collective bargaining agreement in the public sector intend to submit a controversy to arbitration absent a clearly manifested intent (*Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, 511), such intent was manifested by the broad definition of grievance chosen by the parties to this contract. Thus, the arbitrator in each case did not exceed his authority in finding petitioner bound to continue its past practice regarding lunch payments for the duration of the period covered by the collective bargaining agreement. This decision is not contrary to *Matter of Civil Serv. Employees Assn., Steuben County Ch. v County of Steuben* (50 AD2d 421) or *County of Ontario v Civil Serv. Employees Assn., Ontario County Ch. (supra)*. In *Steuben,* there was an unambiguous provision in the agreement which eliminated the necessity of looking at any past practice while *Ontario* involved benefits for retired employees who were not even covered by the contract. Petitioner also raises the issue that the arbitrators' awards will force it to violate section 203 of the County Law which provides that the "actual and necessary expenses of all * * * employees * * * incurred in the performance of their official duties * * * shall be a county charge." Without deciding whether or not meal expenses incurred by county employees are "actual and necessary" expenses, we note that section 203 only states that these expenses *shall* be county charges and does not preclude the county from incurring a charge which is not due to actual and necessary expenses. We have examined petitioner's other arguments and find them to be without merit. Accordingly, the orders entered by Special Term should be affirmed. Orders affirmed, without costs. Mahoney, P. J., Greenblott, Sweeney, Kane and Main, JJ., concur.