In the Matter of the Arbitration between CITY SCHOOL DISTRICT OF OSWEGO, Appellant, and OSWEGO CLASSROOM TEACHERS ASSOCIATION, Respondent.

Fourth Department, March 6, 1984

APPEARANCES OF COUNSEL

*John T. Sullivan, Jr.,* for appellant.

*Bernard F. Ashe* (*Gunter Dully* and *Rocco A. Solimando* of counsel), for respondent.

*McGivern, Shaw & O'Connor* (*Henry F. Sobota* of counsel), for New York State School Boards Association, Inc., *amicus curiae.*

### OPINION OF THE COURT

MOULE, J.

The principal question presented on this appeal is whether an arbitrator's failure to disclose a contractual relationship with a parent organization of a party before him is a sufficient basis for vacating an award.

Petitioner City School District of Oswego (School District) and respondent Oswego Classroom Teachers Association (Teachers' Union) entered into a collective bargaining agreement on March 12, 1980 for the period from July 1, 1979 to June 30, 1981. It contained a grievance procedure which provided for binding arbitration on any claimed violation of an express provision except for enumerated provisions under section D of article II and any provision which, by its own terms, excluded binding arbitration.

Section D of article XI of the agreement governed the terms of sabbatical leaves for teachers and provided that such leaves were to be "limited to one percent of the teaching staff". While section D of article XI was not one of the enumerated provisions under section D of article II to which binding arbitration was excluded, the last sentence of the article provided that "[t]he decision regarding the awarding or denial of sabbatical leaves shall not be subject to binding arbitration."

On April 16, 1981 the Teachers' Union filed a grievance alleging that the School District had violated section D of article XI by only granting one of three sabbatical leave applications for the 1981-1982 school year instead of three.[1] After the parties were unable to resolve the grievance, the Teachers' Union served a demand for arbitration in accordance with the grievance procedure under the collective bargaining agreement. The parties, by mutual agreement, chose James Cashen to arbitrate the dispute. Prior to the arbitration hearing, the School District notified the tribunal administrator of the American Arbitra-

---

[1]. The teaching staff numbered approximately 300. Hence, 1% of the teaching staff was equal to three.

tion Association (AAA) that it would only consider the arbitration of this dispute to be advisory.

Three issues were submitted by the parties for arbitration: first, whether the Teachers' Union grievance chairperson had standing to bring the grievance since none of the employees whose sabbatical leave applications were denied filed a grievance; second, whether section D of article XI of the collective bargaining agreement between the parties was subject to binding or only advisory arbitration; and, third, whether the School District violated the terms of section D of article XI by providing only one sabbatical leave for the 1981-1982 school year. The arbitrator was authorized by both parties to fashion a remedy if he found the School District to be in violation of section D of article XI. Two hearings were held at which testimony and documentary evidence was presented by both of the parties who were afforded the opportunity to cross-examine the other party's witnesses. Appearing for the Teachers' Union was a field representative of the New York State United Teachers Union (NYSUT), the parent organization of the Teachers' Union.

After the conclusion of the hearing, Cashen held that the union grievance chairperson had standing to bring the grievance, that arbitration of this dispute was binding, and that section D of article XI obligated the School District to grant three sabbatical leaves when there were sufficient applications. Cashen found that the language of section D of article XI regarding arbitration, that "[t]he decision regarding the awarding or denial of sabbatical leaves shall not be subject to binding arbitration", was ambiguous and, therefore, extrinsic evidence as to its meaning was proper. Relying upon the unrebutted testimony of union witnesses that in prior negotiations the School District had expressed concern over grievances filed by unsuccessful sabbatical leave applicants and that the district had previously attempted to negotiate the sabbatical leave provision out of the contract, Cashen held that the language precluding binding arbitration was intended to apply only to the question of to whom the sabbaticals should be awarded, not the actual number of leaves that were to be provided. Cashen referred to the same evidence to support his con-

clusion that the district was obligated to provide three sabbatical leaves when there were at least three applicants. The remedy granted in the award provided the School District with an option as to when to make up the two sabbatical leaves it had failed to grant during the 1981-1982 school year.

The School District subsequently applied for an order under CPLR 7511 to vacate the arbitrator's award on three grounds. First, that at the time Cashen was selected to arbitrate the dispute, it was unaware that he was a permanent member of the arbitration panel of NYSUT, involving his serving as an arbitrator of disputes between NYSUT and its field representatives. The School District alleged that this continuing relationship was sufficient to demonstrate bias on the part of the arbitrator and that it was prejudiced by this partiality. The second ground for vacatur was that Cashen exceeded his power under the contract by holding that the award should be binding since this interpretation was contrary to the clear and unequivocal language of section D of article XI. The third ground for vacatur was that Cashen so imperfectly executed his powers that a final and definite award was not made. The Teachers' Union made a cross application for confirmation of the award.

Special Term found that, despite Cashen's relationship with NYSUT, the record failed to reveal any appearance of bias on the part of the arbitrator. It also found against the School District on the other asserted grounds for vacatur, denied the application for an order vacating the award and granted the Teachers' Union's cross application to confirm the award.

Petitioner contends that Special Term erred in denying its application for an order vacating the award. It continues to argue both that Cashen exceeded his powers under the contract by deciding that the award should be binding and that it was prejudiced by Cashen's failure to disclose his relationship with NYSUT prior to his arbitrating the dispute. Petitioner has, however, abandoned its argument that Cashen so imperfectly executed his powers that a final and definite award was not made.

■ The first question presented is whether Cashen exceeded his powers under the contract by interpreting the agreement to provide for binding arbitration of the sabbatical leave dispute. The Teachers' Union correctly maintains that, since the collective bargaining agreement authorized the arbitrator to interpret its provisions, the arbitrator's determination can be set aside for exceeding his authority only if it ignores an express contractual limitation on the arbitrator's authority or reflects a completely irrational interpretation of the contract (*Rochester City School Dist. v Rochester Teachers Assn.,* 41 NY2d 578, 582; *Lentine v Fundaro,* 29 NY2d 382, 385-386; *Pavilion Cent. School Dist. v Pavilion Faculty Assn.,* 51 AD2d 119, 122-123; *Matter of Civil Serv. Employees Assn. v County of Steuben,* 50 AD2d 421, 425). It is, however, unnecessary to resort to these general principles of review to resolve this question. By submitting the question of whether it violated the sabbatical leave provision and authorizing the arbitrator to fashion a remedy if he found a violation, the School District waived any claim that the arbitrator acted in excess of his authority. Empowering the arbitrator to fashion an appropriate remedy converted the proceeding into one resulting in binding arbitration (*Board of Educ. v Yonkers Federation of Teachers,* 46 NY2d 727, 729; *Matter of Hempstead Classroom Teachers Assn. v Board of Educ.,* 79 AD2d 709, 710; cf. *Matter of Plainedge Federation of Teachers v Plainedge Union Free School Dist.,* 58 NY2d 902, 903-904; *Board of Educ. v Farmingdale Federation of Teachers,* 92 AD2d 599, 601).

■ The School District's second argument is that the award should be vacated because it was prejudiced by Cashen's failure to disclose his relationship with NYSUT prior to arbitrating the dispute. A court may vacate an arbitrator's award if the rights of a party are prejudiced by the partiality of an arbitrator appointed as a neutral (CPLR 7511, subd [b], par 1, cl [ii]). Partiality may be shown by actual bias or the appearance of bias from which a conflict of interest may be inferred (see *Matter of Kornit* [*Plainview-Old Bethpage Cent. School Dist.*], 49 NY2d 842, 843-844). Generally, before entering upon their duties, arbitrators should disclose "any relationship direct or indirect that they have with any party to the arbitration, and

disclose all facts known to them which might indicate any interest or create a presumption of bias" (*Matter of Stevens & Co. [Rytex Corp.]*, 34 NY2d 123, 129-130; see, also, *Matter of Weinrott [Carp]*, 32 NY2d 190, 200-201; *Matter of Labor Relations Section of Northern N.Y. Bldrs. Exch. v Gordon*, 41 AD2d 25; *Matter of Colony Liq. Distrs. [Local 669, Int. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Amer.]*, 34 AD2d 1060, affd 28 NY2d 596; 6 CJS, Arbitration, § 64, pp 271-272). While this rule does not require an arbitrator to disclose "insignificant contacts" with the parties before him (*Matter of Labor Relations Section of Northern N.Y. Bldrs. Exch. v Gordon, supra*, p 28), it does require that any "substantial relationship" be revealed (*Matter of Stevens & Co. [Rytex Corp.], supra*, p 127). Our inquiry in this case must, hence, be focused on whether Cashen's indirect relationship with the Teachers' Union through his employment with NYSUT was significant enough to support an inference of bias and require disclosure.

Cashen's contractual relationship with NYSUT consisted of his being one of a panel of eight arbitrators designated to hear and determine disputes between NYSUT and its field representatives. While not employed by NYSUT, Cashen received a fee for each arbitration which was paid equally by NYSUT and the field representatives' bargaining unit. It is important that the Teachers' Union was represented at the arbitration hearing by a NYSUT field representative and is represented on this appeal by counsel for NYSUT. Given this relationship between NYSUT and the Teachers' Union, and considering Cashen's ties with NYSUT and that he was the sole arbiter of the dispute, Cashen's indirect relationship with the Teachers' Union was substantial enough to create an inference of bias and, consequently, should have been disclosed.[2] Cash-

---

2. This conclusion is supported by the Court of Appeals recent decision in *Matter of Conley v Ambach* (61 NY2d 685). At issue in *Conley* was the Commissioner of Education's determination to annul a decision of a hearing panel under section 3020-a of the Education Law based upon the partiality of the panel chairman, James Cashen. The commissioner's decision to vacate the award was based upon the same circumstances presented in this case: Cashen's undisclosed, indirect relationship with the local teachers' union through his remunerative position with NYSUT and the appearance of NYSUT counsel at the hearing. While the court's decision in *Conley* is not determinative of this appeal since it only addressed the question of whether the commissioner's determination was arbitrary and capricious, the court's analysis is instructive. In upholding the commissioner's action, the court stated (p 688): "Although no direct

en's failure to disclose this relationship prejudiced the School District since "it could reasonably be inferred that a person in his position might not have been acceptable as an arbitrator if the facts had been disclosed to [the School District]" (*Matter of Stevens & Co. [Rytex Corp]*, *supra*, pp 126-127).

The order of Special Term should be reversed, petitioner's application granted and the award vacated. Additionally, since the School District has waived any claim that arbitration is to be nonbinding by empowering the arbitrator to fashion a remedy if the sabbatical leave provision was found to have been violated, any future award in this matter shall be deemed binding.

HANCOCK, JR., J. P., DENMAN, BOOMER and GREEN, JJ., concur.

Order unanimously reversed, without costs, petitioner's application granted, and award vacated.

---

relationship between the chairman and one of the parties to the proceeding was revealed, there was shown to have been an undisclosed connection between the chairman and counsel for the teacher. This connection alone, without any showing of actual partiality or impropriety on the part of the chairman (of neither of which is there any suggestion in this record), constituted a rational basis for the commissioner's action." This language implies that the arbitrator's unrevealed relationship, virtually identical to the one presently at issue, was substantial enough to create at least some inference of bias.