■ NEW YORK RESTAURANTS EXCHANGE, INC., Respondent, v CHASE MANHATTAN BANK, N. A., Appellant. [642 NYS2d 626] —Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered October 17, 1995, which granted plaintiff's motion to declare defendant's 15 day default notice dated August 25,

1995 null and void and directed the parties to provide each other with the names of five potential appraisers, which had not been submitted before, unanimously reversed, on the law, and plaintiff's motion denied, with costs.

Appeal from an order of the same court and Justice, entered April 26, 1995, granting the same relief, dismissed as academic, without costs.

Plaintiff is the sublessee and defendant is the tenant and sublessor of commercial premises at 1500 Broadway where plaintiff operates a Beefsteak Charlie's restaurant. Pursuant to the terms of the May 19, 1972 sublease, under which plaintiff exercised its option to renew for an additional ten year term from June 1, 1988 to July 31, 1998, the increased rent for the period June 1, 1993 through July 31, 1998 is set at "$200,000 per annum or the fair rental value of the Demised Premises, whichever shall be greater." In the event the parties failed to agree on the amount of the increased rent, the sublease provides for arbitration in the manner provided in the prime lease. Section 1.4 of the prime lease provides for each party to appoint an appraiser and if the appraisers so designated are unable to agree, they shall appoint a third appraiser and in the event no two appraisers agree, "the decision of the third appraiser shall be conclusive and binding upon the parties."

When the parties could not agree on a fair rental value by May 31, 1993, Chase invoked the provisions of section 1.4 of the lease by designating an appraiser. Upon plaintiff's failure to designate its appraiser within the applicable time limit, Chase sent a notice of default and a demand to cure. Rather than appointing its own appraiser, plaintiff commenced a declaratory judgment action seeking to enjoin Chase from terminating the sublease by reason of the notice of default and a declaration that the issue for determination by the appraiser was the value of the sublease having five remaining years and not the fair rental value of the premises based upon what a new tenant would pay for a new lease on the open market.

In an order and judgment (one paper) entered April 19, 1994, the IAS Court denied plaintiff's request for injunctive relief, directed plaintiff to designate an appraiser within ten days and dismissed the complaint "without prejudice to plaintiff's submission to the appraiser of its construction of the agreement." In addition, the court retained jurisdiction to appoint a third appraiser in the event the two appraisers failed to agree on the fair rental value or failed to agree upon a third appraiser.

Predictably, the parties' appraisers failed to agree on the

fair rental value or a third appraiser. Accordingly, by order entered December 30, 1994, the IAS Court appointed Howard Rosenthal as the third appraiser. Plaintiff's attorney then asked Mr. Rosenthal to recuse himself because his son did some residential appraisals for Chase. Mr. Rosenthal did not respond to such request and rendered a report dated January 30, 1995 in which he considered the appraisals by the parties' respective appraisers (plaintiff's values averaged $68.71 per square foot and Chase's values averaged $90 per square foot) and estimated a value of $75 per square foot as the fair market rental of the premises.

Based upon Mr. Rosenthal's appraisal report, Chase sent plaintiff a notice of default, dated February 24, 1995, asserting that plaintiff owed back rent from June 1, 1993, totalling $756,043.75. Plaintiff then moved to vacate such notice asserting bias or the appearance of bias and that Mr. Rosenthal never allowed it to present its position with respect to the method of valuation as previously directed by the court. By order entered April 26, 1995, the IAS Court, without opinion, declared Chase's notice of default to be null and void. Chase then moved for reargument. It also sought an order instructing an appraiser or appointing a new appraiser and requiring plaintiff to post a bond.

By order entered August 25, 1995 the IAS Court granted reargument and, upon reargument, denied plaintiff's motion to nullify Chase's notice of default and confirmed Rosenthal's appraisal report, stating that, according to the express language of the controlling lease provisions, the determination of the third appraiser was to be final. The court rejected plaintiff's contention that Mr. Rosenthal's report was predicated upon the theory of fair market rent rather than the concept of fair rental value. It further found that the fact that Rosenthal's son had done occasional appraisal work for Chase, standing alone, was hardly sufficient reason for charging the appraiser with bias or favoritism.

Chase then served an updated notice of default, dated August 25, 1995, for a total amount of $972,056.25. Plaintiff again moved to nullify such notice, once again arguing that the appraiser had not given it an opportunity to assert its position regarding the meaning of "fair rental value". By order entered October 17, 1995, the court, without explanation, granted the motion and directed the parties to provide each other with five names which have never been submitted before as potential appraisers.

Pursuant to the terms of the lease and sublease, once an in-

dependent third appraiser was appointed by the court, the decision rendered by him was to be final and binding upon the parties. Plaintiff, however, chose to attack the determination reached by the court appointed appraiser pursuant to CPLR 7511 (b) (1) (ii), which provides for the vacatur of an arbitration award upon a finding that the rights of a party were prejudiced by "partiality of an arbitrator appointed as a neutral." Assuming, *arguendo*, that CPLR article 75 applies to this case, partiality may take two forms, actual bias, which must be proven by clear and convincing evidence (*see, Matter of Dember Constr. Corp. [New York Univ.]*, 190 AD2d 537), and the appearance of bias from which a conflict of interest may be inferred (*see, Matter of City School Dist. [Oswego Classroom Teachers Assn.]*, 100 AD2d 13, 17).

In this case, Mr. Rosenthal disclosed to plaintiff's appraiser the fact that his son did some residential appraisal work for Chase, and plaintiff objected, before Mr. Rosenthal rendered his opinion. The IAS Court's finding in its August 25th decision, that plaintiff waited until after the report was rendered to object, was erroneous, and it does not appear, as asserted by Chase, that plaintiff waived its objection to the potential conflict of interest (*see, Matter of Siegel [Lewis]*, 40 NY2d 687).

That being the case, however, where the potential conflict of interest is fully disclosed, the determination of Mr. Rosenthal may nevertheless be confirmed, in the absence of any showing of actual prejudice or partiality (*see, e.g., Mannor Corp. v Zanzibar Intl.*, 192 AD2d 306; *Milliken & Co. v Tiffany Loungewear*, 101 AD2d 739). Here, the figures arrived at by Mr. Rosenthal were closer to the figures calculated for plaintiff than they were to the figures calculated for Chase and, in response to plaintiff's motion, Mr. Rosenthal asserted that he did in fact consider plaintiff's theory of valuation. Moreover, even if he did not, that would not be a basis to overturn his report inasmuch as the interpretation of the terms of an agreement by an arbitrator, acting within the scope of the arbitration, is not subject to judicial review (*see, Matter of Bill of Fare [King]*, 191 AD2d 344). In addition, contrary to plaintiff's assertions, neither the lease nor the sublease required that the appraiser(s) hold a hearing in order to make a determination.

Added to this, the IAS Court already determined, on a motion to reargue, that the report was not infected with partiality or bias. Plaintiff did not appeal that determination, and there is no reason given for the apparent 180 degree turn by the IAS Court on what, in essence, appears to have been yet another motion to reargue. Concur—Sullivan, J. P., Wallach, Kupferman, Nardelli and Tom, JJ.