OPINION OF THE COURT
Nicholas Figueroa, J.
Petitioners, major tobacco and cigarette manufacturers, move for an order pursuant to CPLR 7511 vacating a $1.25 billion *541 arbitration award to respondents as legal fees on the grounds that the majority panel exceeded its authority by compensating respondents for legal work not done in connection with the Davis, Ellis California litigation in which respondents sought damages on behalf of California residents suffering from smoker’s related illnesses.
Background
Respondents, part of a nationwide consortium of 56 law firms known as the Castaño Group, were attorneys of record in Ellis v R.J. Reynolds Tobacco Co. (the Ellis action), a class action filed in the Superior Court of the State of California, County of San Diego. As part of a master settlement agreement (MSA) in November 23, 1998, tobacco companies agreed to pay $240 billion in settlement of outstanding class actions then pending in 46 states, and certain territories. The State of California’s share of this settlement was $25 billion.
Pursuant to the MSA, separate and apart from these various settlements, petitioners also agreed to pay reasonable attorneys’ fees to private law firms representing the various state attorneys general on a state by state basis, according to a model fee payment agreement.
In California, part of the petitioners’ commitment to pay legal fees to private attorneys included the Ellis fee payment agreement of September 28, 2000, whereby respondents agreed to dismiss their Ellis action in exchange for an opportunity to submit their application for legal fees to arbitration, even though, as petitioners point out, the Ellis attorneys had not represented the California Attorney General in its suit, nor in its $25 billion negotiated settlement.
In accordance with the protocol established in the model fee payment agreement, four days of arbitration hearings were held in New York City from February 26 to March 1, 2001 during which the parties presented evidence on the amount of legal fees payable to Ellis private counsel. Ultimately, the two majority arbitrators awarded respondents $1.25 billion in attorney fees.
The primary issue posed by petitioners’ motion is whether the majority arbitrators exceeded their power by awarding legal fees to respondents for litigation outside the State of California, going back to 1993.
Petitioners’ principal challenge to the award is grounded on CPLR 7511 (b) (1) (iii) based on their contention that the majority panel “exceeded [its] power or so imperfectly executed it *542 that a final and definite award upon the subject matter submitted was not made.” More precisely, petitioners claim that the arbitrators exceeded their authority under section 2 of the fee payment agreement (hereinafter FPA), which expressly limited the scope of their evaluation to legal work done “in connection with” the Ellis action in California, and instead awarded $1.25 billion to the Castaño Group for its nationwide litigation efforts in other states.
The Castaño Group Suits and The Ellis Action
In 1994 the Castaño Group filed a national class action in Federal District Court, Eastern District of Louisiana, based on the novel allegation that tobacco companies had fraudulently concealed the addictive nature of nicotine. The Group also filed similar class action suits in various states. In 1996, however, the Louisiana federal class action was dismissed after being decertified. The Castaño Group then filed 25 “baby Castaño” class actions in 19 states, including the Ellis action.
Also in 1996, Liggett Tobacco reached a settlement with various state attorneys general, and the Castaño Group participated in this seminal accord. The “June 20th Accord” followed, being signed in 1997, wherein the major tobacco manufacturers agreed to pay a total of $368 billion to various states to settle pending cases against them. The Castaño Group, in recognition of its pending “baby Castaño” cases, was the only nongovernmental party permitted a voice in the accord. This accord soon died for want of supportive enactments in the United States Congress.
The Ellis action was the last of four California tobacco cases brought by private parties under a California statute authorizing such actions by private attorneys general on behalf of the people of the state (Cal Bus & Prof Code § 17200). In essence, these cases sought the same damages as the California Attorney General’s major suit. A total award of $637,500,000 was granted the private attorneys general in the other three cases by an earlier panel. This award was separate from that made to private counsel representing the actual attorney general in its suit.
The Motion to Vacate
The parties acknowledge that section 10 of the FPA outlines the evaluation method the arbitrators were to use. It stated that the panel was authorized to consider all relevant information submitted to them in reaching a fee award that fairly provided for full reasonable compensation of Ellis counsel, and *543 that the panel would, not be limited to an hourly rate or lodestar analysis, rather, the panel would take into account the totality of the circumstances.
The cornerstone of petitioners’ grievance, however, concerns the panel’s alleged violation of section 2 of the FPA which governs attorneys’ fees. Petitioners claim it restricted the panel’s geographical and temporal power to legal work done “in connection with” the Ellis action in California. In its entirety, the clause reads as follows:
“Section 2. Agreement to Pay Fees.
“The Original Participating Manufacturers will pay reasonable attorneys’ fees to Ellis Private Counsel for their representation of the plaintiffs in connection with the [Ellis] Action, as provided herein and subject to the Code of Professional Responsibility of the American Bar Association. Nothing herein shall be construed to require the Original Participating Manufacturers to pay any attorneys’ fees other than a Fee Award, as provided herein, nor shall anything herein require the Original Participating Manufacturers to pay any Fee Award in connection with any litigation other than the [Ellis] Action.” (Emphasis added.)
Militating against respondents’ extraterritorial view is the critical last sentence of section 2 providing, that, “nor shall anything herein require the Original Participating Manufacturers to pay any Fee Award in connection with any litigation other than the [Ellis] Action.”
Petitioners claim the majority panel ignored the limiting effect of the second sentence, which barred consideration of “any Fee Award in connection with any litigation other than the [Ellis] Action.” This omission, they claim, resulted in the majority arbitrators exceeding their power by rewriting the FPA to enable them to credit the value of the Castaño Group’s legal services throughout the United States, despite section 2’s express exclusion.
The Majority Panel’s Opinion
After acknowledging that neither their 19 prior FPA awards nor the hearing witnesses’ testimony provided clear direction on where to draw the line in determining work done in connection with the Ellis action, the majority opinion designated three categories which they would consider compensable: work directly performed within and as part of the Ellis action; national work product specifically available and to be used in *544 the trial of the Ellis action; and national effort contemporaneous with the Ellis action which may reasonably have contributed to the deposition of the case.
Generally, the majority’s opinion adopted the theory espoused by respondents’ hearing witnesses, some of whom emphasized the risk, complexity and prodigious effort involved in respondents’ pioneering litigation, which enabled subsequent plaintiffs, aside from the Castaño Group, to eventually prevail over the tobacco companies.
Analysis
Preliminarily, it is noted that applicable California law is substantially in accord with New York’s to the extent that a resolution of this motion based on the parties’ legal arguments presents no conflict. In any event, since the arbitration took place in New York, the court relies on New York’s jurisprudence.
Generally, both jurisdictions recognize that in order to achieve arbitration’s dual purpose of an equitable result and expediency, the arbitrator’s award should be given great deference. Finality is the key. Accordingly, CPLR 7501 expressly forbids judicial review of the parties’ disputes. Therefore, failure to establish a statutory ground for vacatur under CPLR 7511 requires confirmation of the award (Matter of Granite Worsted Mills [Cowen], 25 NY2d 451). Moreover, in New York there is a strong public policy favoring arbitration, consequently an award is not subject to vacatur “unless the court concludes that it is totally irrational or violative of a strong public policy” and thus in excess of the arbitrator’s powers (Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146,155; Maross Constr. v Central N.Y. Regional Transp. Auth., 66 NY2d 341).
Relative to the issues presented in the instant case concerning an arbitrator’s power, the New York cases comprise several major categories. First are those cases where the arbitrator derives his authority from a broad arbitration clause, which is usually an integral part of the parties’ collective bargaining or commercial agreement.
Where the arbitrator proceeds pursuant to a broad arbitration clause, such as “to decide all disputes arising under the parties agreement,” the arbitrator’s interpretation of the underlying agreement is plenary and will be given the widest deference, even despite an apparent disregard of the agreement’s provisions and relevant evidence (Graniteville Co. v *545 First Natl. Trading Co., 179 AD2d 467). Even if the arbitrator is mistaken on the law or facts or disregards the plain words of the agreement, under CPLR 7511 (b) (1) (iii) the award will be confirmed unless the court concludes that the arbitrator’s interpretation is completely irrational or violative of a strong public policy, or exceeds a specifically enumerated limitation on the arbitrator’s power (Matter of Silverman [Benmor Coats], 61 NY2d 299; Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578; Matter of National Cash Register Co. [Wilson], 8 NY2d 377, 383). As a general rule, but particularly in public collective bargaining disputes, the arbitrator may do justice and “the award may well reflect the spirit rather than the letter of the agreement” (Matter of Board of Educ. of Dover Union Free School Dist. v Dover-Wingdale Teachers’ Assn., 95 AD2d 497, 502).
Courts in their limited role are bound by an arbitrator’s factual findings, interpretation of the contract, and judgment concerning remedies. A court cannot substitute its judgment for that of the arbitrators simply because it believes its interpretation of the contract is superior to that of an arbitrator who has made errors of judgment or fact (Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321; Matter of Albany County Sheriffs Local 775 of Council 82 [County of Albany], 63 NY2d 654).
Another category of cases more relevant to the present issues involve those where vacatur is appropriate because the arbitrator exceeds his power in interpreting the contract in violation of an arbitration clause. For instance, the Court found in Matter of Local Union 1566 v Orange & Rockland Utils. (126 AD2d 547, 549) that where the arbitration clause “contained an express restriction upon the remedial authority of the arbitration board, proscribing any * * * alteration of the remaining terms of the agreement [, s]uch an express limitation upon arbitral authority, if set forth in the arbitration clause, will be upheld” (Matter of Professional Trade Show Servs. v Licensed Ushers & Ticket Takers Local Union 176, 262 AD2d 42; Matter of Board of Educ. of N. Babylon v North Babylon Teachers’ Org., 104 AD2d 594). In cases determining whether an arbitrator acted in excess of his power, two basic factors are considered. First, was the construction given the contract document (in Ellis § 2) completely irrational (Lentine v Fundaro, 29 NY2d 382, 385; National Cash Register, supra, 8 NY2d at 383); and, second, did the contract agreement itself expressly limit the power of the arbitrator (Lentine v Fundaro, supra at *546 385-386; Granite Worsted Mills, supra at 456-457). The question then becomes: was the award the result of an irrational construction and did the arbitrators merely interpret the contract or did they, in fact, exceed their authority by creating a new contract? (Matter of Civil Serv. Empls. Assn. v County of Steuben, 50 AD2d 421.) An arbitrator exceeds her power only if her construction of the contract is completely irrational, tantamount to making a new contract (see, Matter of Brijmohan v State Farm Ins. Co., 92 NY2d 821 [arbitrator made an award in excess of insurance policy limits]).
The instant case is distinctive because it involves the very clause limiting arbitral power; there is no underlying substantive agreement as such. The principal issue at bar is whether the panel exceeded its power by disregarding section 2’s restrictions. In turn, this requires an interpretation of the arbitration clause itself. The parties have solely agreed to have the arbitrators determine one thing — the narrow issue of Ellis action fees payable to respondents, nothing more. In overstepping section 2, the arbitrators undertook to resolve the unsubmitted issue of respondents’ nationwide compensation. Their geographical scope, however, was limited by section 2’s narrow arbitration clause, therefore, by overstepping this limitation the arbitrators exceeded their power. The Ellis FPA illustrates an example “where the document expressly limits or is construed to limit the powers of the arbitrators, hence, narrowing the scope of arbitration” (Lentine v Fundaro, 29 NY2d 382, 385, citing Matter of Granite Worsted Mills, 25 NY2d 451, supra at 456-457). Thus, an arbitrator was found to have acted in excess of granted powers by determining “an issue outside the scope of the submission in violation of a specific limitation in the agreement which confines the arbitrator to the precise issue submitted for arbitration” (Matter of State of New York [United Univ. Professions], 150 AD2d 877, 879). For instance, in Matter of Denihan (Denihan) (97 AD2d 69, 73) the Court reversed the award’s confirmation partly on the grounds that the arbitrators purported to resolve an issue which was not submitted to them, e.g., violation of the shareholder’s agreement by a transfer of stock.
Under CPLR 7511 an award may be vacated “where the document expressly limits or is construed to limit the powers of the arbitrators, hence, narrowing the scope of arbitration” (Lentine v Fundaro, 29 NY2d 382, 385, citing Matter of Granite Worsted Mills [Cowen], 25 NY2d 451, 456-457, supra; Matter of County of Chemung [Civil Serv. Empls. Assn.], 277 AD2d 792). *547 Therefore, the task of resolving the question of arbitral authority is largely confined to an interpretation of the arbitration clause. Taken as a whole section 2’s words must be construed as a narrow arbitration clause limiting the arbitrator’s purview to the amount of legal fees emanating from the Ellis action and concomitantly placing the issue of nationwide compensation beyond arbitral reach. A leading case which supports this view is Matter of Silverman (Benmor Coats) (61 NY2d 299), concerning whether the arbitrator had exceeded his power. The Court of Appeals affirmed the lower court’s confirmation of the award, with the majority confronting the distinction between a broad arbitration clause covering any contract dispute in the face of a limitation contained in the substantive provision of the contract itself. The majority held that the exclusion of a substantive issue from arbitration requires that the limitation on the arbitrator’s power be contained explicitly or by reference in the arbitration clause itself; in other words, restricted by the “specific enumeration in the arbitration clause itself of the subjects intended to be put beyond the arbitrator’s reach” (at 308).
Unlike cases where the arbitrators’ interpretation of the underlying contract is given great deference, an interpretation of the words in section 2 unequivocally limits the arbitrators to an assessment of a legal fee in “connection with the Ellis Action.” The arbitrators cannot elastically interpret this clause so as to expand their jurisdiction. A reading of the clause leaves little room for misapprehension, and correspondingly little need for arbitral deference. This is not a case where, relative to clause (iii) of CPLR 7511 (b) (1), there has been disagreement as to what may “constitute an ‘excess’ of power and hence a ground to vacate. The excess standard is not so difficult to minister when the arbitration clause is narrow, applying only to designated issues and thereby putting all others beyond arbitration.” (Siegel, NY Prac § 602, at 1021 [3d ed].)
Moreover, cases generally hold that where the court construes a clause as containing an express restriction upon the remedial power of the arbitration board, such limitation upon arbitral authority if set forth in the arbitration clause will be upheld (Local Union 1566 v Orange & Rockland Utils., 126 AD2d 547, supra). A similar restriction proscribing any modifications of the terms in an agreement has been held to exceed the arbitrator’s power when violated (Professional Trade Show Servs. v Licensed Ushers & Ticket Takers, 262 AD2d 42, supra).
*548 It should be noted that the Ellis panel has considered an attorney’s previous out-of-state litigation in fashioning past awards, such as in the Illinois FPA. In those cases, however, it was clear that these prior legal efforts directly affected the principal suit under consideration. For instance, the Illinois panel properly credited the attorneys for their out-of-state efforts while representing the State Attorney General during the Liggett I and MSA settlement negotiations. This is understandable, because by dint of the attorneys’ efforts during these conferences, they were able to settle the State of Illinois’ claims against the tobacco companies, a vastly different scenario from awarding fees for national work in the Castaño Group’s frustrated Louisiana federal class action and the “baby Cas-taño” suits.
In conclusion, this court finds that the limitations expressly set forth in section 2 were intended to mean what they apparently say, that compensation was to be restricted to work primarily done “in connection with” the Ellis case, meaning in California. This court also finds that the majority panel based their award on the unsubmitted issue of respondents’ nationwide compensation, to permit respondents, however otherwise deserving, to be awarded legal fees for work, unlimited as to time and place, in direct contravention of section 2’s limitation on their power to do so. This overstepping was the result of the majority panels’ inclination toward an irrelevant appreciation of respondents’ strenuous and worthy, but unremunerative litigation during the better part of a decade. Whatever the merits of respondents’ laudable efforts during the tobacco wars, the rationale chosen by this panel to reward those efforts exceeded their power under the arbitration clause. Hence they rendered an award on an element of damage specifically excluded by the contract (Granite Worsted Mills, 25 NY2d 451, supra).
This court finds that the Ellis action’s primary effect on the hearings was its unforeseen role as a conduit for evaluation of respondents’ national efforts. In effect, petitioners agreed to have the panel evaluate the visible California portion of the Ellis iceberg, and instead were subjected to an award for the unforeseen mass of a claimed 400,000 billable hours of national litigation.
While there is no requirement that an arbitration panel issue a written opinion, having done so, its writing may be perused to determine whether its underlying basis is the product of an excess of power resulting from a completely irrational construction of the provisions in dispute, such as section 2. *549 (See Siegel, NY Prac § 600 [3d ed]; Dahlke v X-L-O Automotive Accessories, 40 AD2d 666.) For example, from a reading of the majority’s opinion, no one is able to determine how the award was allocated among respondents’ 25 class actions, whether it was all, or just some of them. It is undisputed that the panel factored into their award what the petitioners characterized during oral argument as “recycled work.” Meaning that legal work, such as depositions, used in the unsuccessful Pennsylvania case, for instance, could be resalvaged and used in the Ellis case in California. The monetary value assigned by the arbitrators to this category of litigation, as well as other categories, is unknown. The overall result, however, is an award for the largest attorney fees, by far, ever granted by an American court.
The court must vacate the award because “an award is deemed irrational when the arbitrators give the provisions in dispute a completely irrational construction * * * and in effect [make] a new contract for the parties.” (Matter of Wand Elec. [Clinton County Highway Dept.], 245 AD2d 984, 985, citing National Cash Register Co. v Wilson, 8 NY2d 377). The Court of Appeals has held that arbitrators have exceeded their powers within the meaning of CPLR 7511 only if they gave a completely irrational construction to the provisions (of the agreement) in dispute and, in effect made a new contract for the parties in the rendering of the award. (Id. at 383.)
Lastly, there is little to be gained by pondering why Philip Morris is not a party to this motion, since it is of no direct consequence to its resolution. The outcome of this motion legally binds all of the original parties to the arbitration, regardless of participation. All of the original participating manufacturers as signatories to the FPA are parties, and are bound by the outcome of the instant motion (Matter of National Cash Register Co. [Wilson], 8 NY2d at 383, supra; cf. Matter of Blamowski [Munson Transp.], 91 NY2d 190, 195; Flum v Goldman Band Concerts, 128 Misc 2d 42; CPLR 7503 [a]).
Accordingly, it is ordered that petitioners’ motion to vacate the arbitration award is granted, and it is further ordered that this matter be remanded pursuant to CPLR 7511 (d) for a rehearing to determine the amount of legal fees payable to the Ellis action attorneys consistent with the limitations imposed by section 2 as set forth in this opinion.